<hr/>

F. E. WATKINS v. EMILIE GOESSLER.[1]

June 16, 1896.

Nos. 9783—(87).

**Mortgage—Negotiability.**
> Evidence considered, and *held* insufficient to justify the finding and order of the trial court.

Appeal by defendant from an order of the district court for Polk county, Ives, J., denying a motion for a new trial.    Reversed.

*Albee Smith* and *C. E. Vanderburgh*, for appellant.

*A. A. Miller*, for respondent.

BUCK, J.    This action was brought to foreclose a mortgage upon a quarter section of land situate in Polk county, in this state, made by Emilie Goessler to Elsie Weber to secure the payment of a promissory note described as follows, viz.: "$500.00.    Minneapo-

[1] Reported in 67 N. W. 796.

lis, Minn., April 1st, 1889. Three years after date I promise to pay to the order of Elsie Weber five hundred dollars, at Minneapolis, Minnesota, value received, with interest before and after maturity at the rate of ten per cent. per annum until paid. Interest payable semiannually. Emilie Goessler." The note was given by the defendant to Elsie Weber to be used by her as her share of the capital of a co-partnership of which James Williams, Theodore England, Elsie Weber, L. A. Nevitt, and F. H. Townsend were members, doing business at Minneapolis, Minnesota, under the name and style of the Minneapolis Kitchen Cabinet Company, which firm was formed about April 1, 1889, and dissolved the last of June, 1889. Elsie Weber is the daughter of Emilie Goessler.

After the delivery of the note and mortgage to Elsie Weber, she indorsed the note and assigned the mortgage to James Williams, treasurer, and one of the partners of the firm, to be by him used as a part of the capital of said company, and delivered the same to him. The note and mortgage therefore belonged to the partnership, although, for convenience, it was put in the name of its treasurer, Williams, as trustee. On June 6, 1889, when Williams resigned as treasurer, he transferred them to the president, T. England, also as a trustee for the partnership. Soon afterwards,—although the exact date does not appear,—T. England embezzled and appropriated them to his own use, by assigning them to W. H. England, who, if not a party to the fraud, was at least cognizant of it, because, knowing that the note and mortgage belonged to the partnership, he applied the greater portion of it in payment of a debt which T. England individually owed him; and therefore W. H. England was not an innocent purchaser. Neither of the Englands informed the other partners of the assignment. In ignorance of this assignment, and supposing the note and mortgage were still in the hands of T. England as their trustee, the partners, late in June, 1889, dissolved the partnership, and made a division of the assets among the partners, by the terms of which this note and mortgage were to be satisfied and destroyed, and surrendered to Elsie Weber as the equivalent of her share. On this state of facts, Elsie Weber, or her accommodation mortgagor (the defendant, Goessler), could have compelled W. H. England, if he still held the note and mortgage, to surrender them and discharge them of record. Defendant did bring such an action,

and obtained such a judgment, which failed to be effective because of the alleged unrecorded assignment to plaintiff, who was not made a party to the action.

These facts constitute a good defense to the mortgage, which is not negotiable, although the note is clearly a negotiable instrument on its face. This court has steadily adhered to the rule that the negotiable character of the note is not thereby imparted to the mortgage which secures its payment, and consequently the mortgage is not free from the immunities or privileges which attach to the secured negotiable note. Johnson v. Carpenter, 7 Minn. 120 (176); Hostetter v. Alexander, 22 Minn. 559; Oster v. Mickley, 35 Minn. 245, 28 N. W. 710; Redin v. Branhan, 43 Minn. 283, 45 N. W. 445; Smith v. Parsons, 55 Minn. 520, 57 N. W. 311. While, so far as the personal liability of the mortgagor on the note is concerned, the assignee may, if an innocent purchaser, before maturity and for value, take it free from the equities, the mortgage in his hands is subject to them. Tiedeman, Com. Paper, p. 533, § 305.

The ninth finding of fact, viz. that, at the time of the sale of the note and mortgage by T. England to W. H. England, the said T. England had the lawful right and authority, as a member of said company, to sell and dispose of the same free of any defense on the part of the maker thereof, is unsupported by the facts, and the evidence is directly to the contrary. As parties to whom the mortgage was assigned prior to the assignment to Watkins could not deprive the defendant of an equitable defense in this action, it is evident that upon well-settled principles, and upon the facts disclosed herein, Watkins, being a purchaser of a chose in action (the mortgage), took it subject to the equities between the original parties, and that his assignor could give no better title than he himself had. There must therefore be a new trial as to the mortgage.

While this might be done, and a new trial denied as to the note, if the facts warranted such a procedure, yet there is evidence tending to show that the plaintiff was not a bona fide purchaser of the note as well as of the mortgage. His evidence and that of W. H. England are very suspicious, and strongly indicate that the two were in collusion. Watkins testified that he could not tell where he got the money to pay for the note and mortgage, and was unable to state what kind of money—whether currency or not—he paid him, and that

he paid him $400 for the note, while the note at that time, including interest, amounted to about $700,—although paying less than face value for the note would not of itself be sufficient to charge him with notice of any infirmity. Again, it appears that, at the time when plaintiff's deposition was taken, the note was still in possession of W. H. England, and it is doubtful if it was delivered to the plaintiff at the time of the alleged purchase. Plaintiff and W. H. England both agree that the latter assured Watkins that he had examined the land and investigated its value, and that the security was perfectly good, and that there was no possible question as to the payment of the note, yet England sells and Watkins purchases this gilt-edge security for about 60 per cent. of its actual value. Plaintiff made no inquiry as to why such a heavy discount was made, no inquiry about the parties, and no information appears to have been given by England. There are very many more earmarks of bad faith on the part of both seller and purchaser, indicating collusion, which we need not specify.

In its seventh finding of fact the trial court states "that at the time of said sale T. England represented to W. H. England that the money then paid by the said W. H. England was for the benefit and use of said company," but this finding is evidently a mistake, as it is entirely unsupported by the evidence.

As a new trial must be granted as to the mortgage, we think that, under the circumstances, a new trial should be ordered of the whole case. So ordered.

Order reversed.