·David W. Knowlton *vs.* Helmuth Schultz, *et al.* ·

Opinion filed April 24th, 1897.

**Action on Note—Bona Fide Purchaser—Burden of Proof.**

> When fraud in the inception of a negotiable instrument is proved, the burden is shifted to the indorsee to prove that he is a purchaser for value, before maturity, without notice, and in good faith. *Held*, under the facts of this case, that such indorsee had not sustained such burden, but that the trial court was justified in finding that he was not a purchaser in good faith.

Appeal from District Court, Ransom County; *Lauder*, J.

Action by David W. Knowlton against Helmuth Schultz and Martha Schultz. Judgment for defendants, and plaintiff appeals. Modified.

*P. H. Rourke*, for appellant.

*J. E. Robinson*, for respondents.

Corliss, C. J. The object of this action was to foreclose two mortgages on personal property. One mortgage was given to secure a note for $225, and the other to secure this note and another note for $71.75.· It is undisputed that the notes· and mortgages were in fact signed and delivered by defendants to one Austin, he being the payee named in such notes, and the person described· in the mortgages as mortgagee. The plaintiff is a purchaser of such notes and mortgages. The defense interposed with respect to the $225 note is that Austin obtained it from the defendants through fraudulent representations. He had been retained to defend for them an ejectment suit, and the case having been tried, and the trial having resulted in a decision favorable to the defendants herein, he presented to them his bill for services. It is undisputed that he was to have from $200 to $300 for his services, and more, not exceeding $400, if he succeeded in getting for them a clear title, as it is expressed by one of the defendants in his testimony. The case shows that, to obtain from them the $225 note, he assured them that their title was per-

fect; that there was going to be no more of the case. Certain payments have been made to Austin by the defendants, but whether they are sufficient to fully liquidate their obligation to him, on the theory that he has not secured for them a clear title, is not very material. It is apparent from the evidence that Austin had been paid $165 on account of his bill for services in the ejectment case, when he presented to defendants the account for which the $225 note was given. The defendant Helmuth Schultz so testifies, and plaintiff offers no rebutting evidence on the point. Austin could easily have explained for what this $165 was paid if it was not paid for services in the ejectment suit. That this sum was paid on account of such services would seem clear from the fact that the item in the bill presented when the $225 note was given is for $235, just the sum necessary to make up the $400 that Austin was to have if he obtained a perfect title for defendants. The fact that Austin had in this bill charged such a sum as he would have been entitled to receive, in addition to the amount already paid, only in the event of his having obtained a clear title for defendants, tends to confirm their evidence that he made the false statement to which we have referred. The item of $235 was larger by $100 than Austin was entitled to charge, unless he obtained such a clear title for them. All this he must have known they were well aware of. As said before, it appears to be uncontroverted that, when Austin presented his bill, the defendants promptly said that it was too much. It is evident that Austin regarded their statement as true from the standpoint of his not having secured for them such a decision in the case as would preclude further litigation of the question of their title, for he replied, in answer to their claim that the charge was excessive, that the judgment which he had obtained for them was just as good as a warranty deed. When defendants stated to him that they had heard that there was going to be a new trial, he answered that that was not true; that there was not going to be a new trial, and there was not going to be anything more of it. When confronted with the claim that the bill was excessive, there

remained for Austin only one of two courses to pursue,—either to reduce it $100, or state that the facts warranted him in making the larger claim. Not having reduced the bill, it is a fair inference that he must have made just such a statement as is testified to by defendants, and the fact that they then signed the note tends to confirm their evidence in this respect. It is by no means clear that defendants are liable to Austin or to plaintiff, assuming that the purchase of the note carried to him Austin's claim against defendants for any sum whatever aside from the amount of the $71 note to be hereinafter referred to. Austin, under the contract, had an absolute right to charge only $200, he not having secured a perfect title. Whether he could collect more than $200 up to the amount of $300 would depend on the question of the reasonableness of the charge, the amount between $200 and $300 not being distinctly agreed upon. That Austin has been paid $200 is shown by the evidence. It may be that in another action the liability of the defendants for a sum not exceeding in all $300 can be established. There is no evidence here warranting a finding that defendants are liable for more than $200. Nor is this the action in which to litigate that question. The note having been obtained by fraud, the fraud tainted the whole instrument, and destroyed it entirely. Whatever cause of action may have existed prior to the execution of the note is, of course, unaffected by it. But such cause of action, if any, is not within the issues of this case. That the statement of Austin to the defendants was false cannot admit of doubt. However much confidence he may have had that the defeated litigants would go no further with the case, he was bound to know as a lawyer that the judgment was not final. As a lawyer, he knew that no judgment is final as soon as it is entered. The action was still pending and the defeated suitor had a legal right to move for a new trial, and to challenge the judgment on appeal. Austin made a positive statement that the case was ended, knowing that he had no positive knowledge on the subject. This, under our statute, is as much a fraud as a statement of fact, knowing it to be false. Rev.

Codes, § 3848. Indeed, he knew it to be false in law. He certainly must have known that there was a possibility of future litigation, however sanguine he may have been that the case would end then and there. The defendants trusted to his knowledge as a lawyer on the question whether the suit was disposed of so as to preclude all possibility of further action in the case. In this regard they were deceived; and, whatever justification Austin may have had in morals, the law is clear that he committed a legal fraud upon the defendants by his false statement. It is perhaps not wholly irrelevant to this case to state that, as a matter of fact, a new trial has been granted in the action of ejectment, and that on the second trial the defendants therein (who are the defendants here) were defeated. Just such a possible result Austin, as a lawyer, must have anticipated when he assured the defendants that the judgment was just as good as a warranty deed, and that there was going to be no more of the case. If ever the utmost good faith should be exacted, it is when the relation of attorney and client exists. The defendants relied implicitly upon the statement of their attorney, and he deceived them in a manner that enabled him to perpetrate a fraud upon them. It is true that Austin was not sworn upon the trial, and that the evidence comes from the defendants alone. But the plaintiff was informed by the answer that this defense would be relied on, and the failure of Austin to testify on this point, although his deposition was taken on another feature of the case, is strong evidence that the charges of fraud in the answer are true. Moreover, Austin's attempt to place the note in the hands of a *bona fide* purchaser only four days before it fell due, to cut off all defense, is significant of his consciousness that he himself would be defeated in an attempt to enforce the same. But it is urged that the plaintiff is a *bona fide* purchaser of the note. When proof of the fraud referred to had been made, the burden immediately shifted to the plaintiff to establish that he bought the note for value, before maturity, without notice of any defense, and in good faith. *Vickery* v. *Burton*, 6 N. D. 245, 69 N. W. Rep. 193;

*Jordan* v. *Grover*, (Cal.) 33 Pac. Rep. 889; *American Exch. Nat. Bank* v. *New York B. & P. Co.*, (N. Y.) 43 N. E. Rep. 168; *Grant* v. *Walsh*, (N. Y.) 40 N. E. Rep. 209; *Commissioners* v. *Clark*, 94 U. S. 278; 2 Rand. Com. Paper, § 1020; *Schmueckle* v. *Waters*, 125 Ind. 269, 25 N. E. Rep. 281. The only evidence on these points is contained in the depositions of the plaintiff and of Austin. The plaintiff testified: "My name is David W. Knowlton; age thirty-one years; resident of the City of Minneapolis; and am a lawyer. I am the plaintiff in this action. I am aquainted with Mr. Austin, of the City of Minneapolis and State of Minnesota. I had some business with Mr. Austin in December, 1893." Two promisory notes (Exhibits A and B) handed to and identified by witness. "These are the promissory notes sued on in this action. I am the owner of these notes. I purchased them from Mr. Austin before their maturity. I purchased them on the 27th day of November, 1893. The notes were transferred to me at that time. I paid for them two hundred dollars ($200). I had not notice at the time of purchase of them of any defense, payments, or offsets that might be against them." Austin testified: "Am resident of Minneapolis, Hennepin county, Minnesota; age, thirty-eight; occupation, lawyer. Before moving to Minneapolis, I resided at Lisbon, North Dakota. I am the Austin mentioned in Exhibits A and B. I sold them to David W. Knowlton previous to their maturity, and on the 27th day of November, 1893. I received for the transfer two hundred dollars ($200) in cash, paid by Mr. Knowlton, the plaintiff."

So far as relates to the questions whether plaintiff purchased the note before maturity and for value, and without notice of any defense thereto, the evidence is explicit. But it is to be noted that nowhere does the plaintiff say anything about his good faith in the transaction. He was informed by the answer that upon the trial of the action the defendants would offer evidence which would impose upon him the burden of proving that he acted in good faith in making the purchase. Only one person can possibly have any positive knowledge on the

subject of the good faith of the purchaser of negotiable paper, and that person is the purchaser himself. Considering how peculiarly that knowledge is within the breast of such purchaser, how easy it is for him to state the fact if it exists, how almost entirely the maker of the paper is at his mercy on the question of good faith, and what opportunities for resorting to fictitious transfers to cut off defenses are afforded to the holders of paper, which they could not themselves enforce, it is certainly not too much to require the purchaser, at least where he is a person, and not a corporation, to state in so many words that he bought in good faith. It may be true in this case that the plaintiff bought before maturity, for value, and without notice of any defense; and yet he may not be a purchaser in good faith. He may, when he bought, have had knowledge of facts which excited in his mind such suspicions as to the paper that he feared to make an investigation, lest it would disclose a defense, and therefore he carefully shut his eyes, and bought in the dark. In such a case he would not be a purchaser in good faith. *Bowman* v. *Metzger*, (Or.) 39 Pac. Rep. 3; *Schmueckle* v. *Waters*, 125 Ind. 269, 25 N. E. Rep. 281; *Bank* v. *Bennett*, (Ind. App.) 36 N. E. Rep. 551; *Tourtelot* v. *Reed*, (Minn.) 64 N. W. Rep. 928. In this case the plaintiff is careful not to state that he bought in good faith, nor does he offer any explanation of the circumstances surrounding the purchase. He and Austin were both attorneys whose offices were adjoining, and, four days before the maturity of the note, he buys it at a discount of over 33⅓ per cent. he paying $200 for the two notes, upon which there was then due over $300. While it is true that one may be a purchaser for value who buys at a discount, and that he is not limited to the amount paid in enforcing the instrument, but may recover the full amount due, according to its terms, yet the fact that, to the knowledge of the purchaser, a party who has only four days to wait before the maturity of the note, which he has already held over six months, is willing to discount it so heavily, although it appears to be amply secured by a chattel mortgage, is of itself a circumstance to be considered by

the trial court in passing on the issue of good faith. The plaintiff, having the burden of proof, has failed to sustain it by positive evidence. The inference of his good faith to be drawn from the other facts sworn to by him is by no means strong; and the case discloses several circumstances which cast grave doubt upon the fact of his good faith in the transaction. There is a significant silence on the subject why Austin was impelled to make the sacrifice, or what explanation he made to the plaintiff as his reason for throwing away over $100, when in four days the debt would have been payable. We think that the learned trial judge was fully justified in his conclusion that the plaintiff was not a purchaser in good faith. That the fact that a negotiable instrument was sold at a heavy discount is a circumstance to, be considered in determining the issue of good faith is recognized by many authorities. *Watkins* v. *Goessler*, (Minn.) 67 N. W. Rep. 796; *Tod* v. *Wick*, 36 Ohio St. 370–392; *Jordan* v. *Grover*, (Cal.) 33 Pac. Rep. 889; 2 Rand. Com. Paper, § 992; *Murray* v. *Beckwith*, 48 Ill, 391; *Auten* v. *Gruner*, 90 Ill. 300.

We hold that the $225 note is void for fraud, and that the chattel mortgage given to secure it is consequently without any debt to support it. The judgment of the trial court was therefore right in so far as it adjudged these instruments to be void, and directed that they be canceled. But it is undisputed that the note for $71.75 was voluntarily executed, and delivered by the defendants to Austin, and there is nothing to impeach its validity. No fraud in connection with the execution of this note is pretended. The plaintiff is therefore entitled to a judgment against the defendants thereon. But the evidence is clear that this note was not described in the second mortgage given by the defendants, but that some one inserted in such mortgage, without the consent or knowledge of the defendants, the statement now appearing in such mortgage that it secures such note. This mortgage is void so far as it relates to this note, and, of course, it is a nullity in so far as it assumes to secure the $225 note, which we hold to be void for fraud. The District Court will enter a new

judgment, which will embrace all the provisions of the judgment appealed from, except those which relate to costs and to the note for $71.75. For this note a judgment will be rendered against defendants in favor of the plaintiff for the full amount due thereon for principal and interest, being $71.75, with interest thereon from May 16, 1893, to the date of such new judgment. Because this is an equity case, also because the judgment is here modified, it becomes necessary for us to pass on the question of costs. As the plaintiff has prevailed in this court, and should have prevailed in the lower court to the extent of recovering judgment on one of the notes, we think he should have the usual costs and disbursements in the District Court, and also in this court. All concur.

(71 N. W. Rep. 550.)