Frank J. Porter vs. William P. Andrus.

Opinion filed Dec. 17, 1901.

### Action on Note—Defenses—Unauthorized Delivery—Indorsement.

Certain persons signed a note, negotiable in form, and left it with an agent of the payee therein named for the purpose of procuring other persons to sign it, after certain conditions as to sale of shares of stock had been performed. The note was not to be delivered to the payee under any circumstances until such conditions had been performed and such other persons had signed the note. The note was delivered by such agent to the payee before such conditions had been performed, and before such other persons had signed. *Held*, that these facts would constitute a defense to the note as against the payee, but not as against an indorsee of such note in due course, as defined in § 4884, Rev. Codes.

### Indorsement as Collateral to Antecedent Debt.

The payee transferred such note to the plaintiffs by a written guaranty of payment indorsed thereon before maturity, as collateral security for a pre-existing debt due from the payee to plaintiffs. No new consideration passed between them at the time of the transfer nor any extension of time, nor was any new obligation or duty incurred at the time by plaintiffs as a matter of fact nor as a matter of law. *Held*, that plaintiffs were not indorsers in due course, under § 4884, Rev. Codes.

### Ruling Proper.

Evidence considered, and it is *held* that there was no error in the refusal of the trial court to direct a verdict for the plaintiffs.

Appeal from District Court, Cass County; *Pollock, J.*

Action by Frank J. Porter and others against William P. Andrus and others. Judgment for defendants, and plaintiffs appeal. Affirmed.

*George A. Bangs,* for appellants.

*Pollock & Scott,* for respondents.

Morgan, J. This is an action upon a promissory note executed and claimed to have been delivered by the defendants to the Leeds Importing Company. As amended, the complaint states a cause of action upon a promissory note in the ordinary form with the following allegation appertaining to the tranfer of such note to the plaintiffs, viz.: "That on the 24th day of June, 1893, the Leeds Importing Company being indebted to these plaintiffs in a sum largely in excess of the amount due on the promissory note above described, indorsed said note as follows: "The Leeds Importing Company, by E. Cooper, Secretary;" and transferred the same to these plaintiffs as collateral security to said indebtedness due these plaintiffs from said Leeds Importing Company, upon the consideration that the date of the maturity of said indebtedness be extended by these plaintiffs for the period of four

months.". The defendants answered the complaint and the amended complaint and alleged, in substance, that on or about May 2, 1892, the defendants were negotiating with the Leeds Importing Company for the purchase of a horse, and agreed with said company that with the said company's co-operation and assistance these defendants, with certain other persons whom said company promised and agreed to procure and induce to take stock in said company, would organize a joint-stock company for the purchase of said horse; that the performance of said agreement was entered upon, and only partially consummated; that the defendants, at the request of said Leeds Importing Company and for the purpose of facilitating the transaction of the business, signed their names to a paper of the character and description of that mentioned and described in the complaint, but upon the express promise and conditions that said note should not be delivered to the said Leeds Importing Company or to any other person until all of the stock of the said company should have been placed, and all of the stockholders should have signed the said note; that said Leeds Importing Company procured possession of said note by fraud and stealth, and departed from the state cladestinely, long before said agreement was consummated, and before said stock of said proposed joint-stock company had been all sold, and before all of the holders of said stock had signed said note, and that in consequence of such action of said company in taking said note out of the state the note was never signed by such other persons. The answer further alleges that such note was transferred to plaintiffs as collateral security for the payment of a pre-existing indebtedness due from said Leeds Importing Company to plaintiffs and not otherwise. The case was tried to a jury. The only question submitted to the jury was whether there was an extension of the time of the payment of the indebtedness from the Leeds Importing Company by plaintiffs at the time the note in suit was indorsed to the plaintiffs by the Leeds Importing Company. The jury found for the defendants, thus finding that there had been no extension of time of the payment of the indebtedness between those parties at that time. The plaintiffs regularly moved for a new trial upon a statement of the case, duly settled, which motion was denied. The plaintiffs appeal to this court from the order denying such motion for a new trial.

The errors specified and assigned are that the court erred in not granting plaintiffs' motion for a directed verdict, and that there was error on the part of the court in not granting plaintiffs' motion for a new trial. Upon a careful consideration of the evidence, we are satisfied that there was no error in submitting to the jury the question whether there was an extension of the time of payment of the indebtedness from plaintiffs to the bank at the time that the note in suit was transferred to them. One witness testified that it was his "recollection and belief" that June 24, 1893, was the time when the plaintiffs received the note, and the time

of payment was then and there extended for a period of four months. But other facts were testified to by this and other witnesses, which, if believed by the jury, would be good grounds for not believing the witness testifying as to the precise time of the transfer and of the extension of the time of payment. This witness was the secretary of the Leeds Importing Company, and the officer that transferred the note to the bank by the written guaranty. He testified by giving two depositions. In the first the precise date of the guaranty was not given, nor did he mention the extension of the time of payment in consideration of the transfer of the note to the bank. He testified that the bank gave him a receipt for this note at the time of the transfer to the bank, but this receipt was not produced. His testimony that he had no notice that defenses were claimed to the note when he transferred it seems to be contradicted by a letter written by him to one of the makers in answer to one to him from this maker, in which this maker complains that the note was delivered to the payee contrary to agreement. These letters were written before the note was turned over to the bank.

Members of the plaintiffs' firm testified that the note was transferred to them as collateral security for the indebtedness due from the Leeds Importing Company to their bank, without any mention of the extension of the time, and without furnishing any data as to the precise time of such transfer. From all of these considerations, we do not think that the secretary's testimony was of that character that entitled it to such absolute weight that a verdict should have been directed upon it. The weight of it under the circumstances, was properly submitted to the jury in connection with the other testimony, and the court did not err in refusing to direct a verdict for the plaintiff.

The next question to be determined on this appeal is, was there such a delivery of the note in suit to the payee as to bind the makers thereof when in the hands of the plaintiffs, under the circumstances under which the plaintiffs received it? The facts pertaining to the delivery of the note to the payee were stipulated by the attorneys at the trial and are as follows: "It is now stipulated that the note was signed by the several parties who did sign the same upon the understanding and promise of the payee that same should be deposited with T. R. Peart, and not delivered to the payee or any other person until $800 more of the stock should be subscribed for, and the subscribers of such additional stock should have signed said note; that said note was never signed by any other subscribers, and never delivered according to the terms of the agreement, but was clandestinely taken by the agent of the payee out of the state; and that no delivery of said note was ever made by any of the parties who signed the same." From this stipulation it appears that delivery to the payee was unauthorizd at the time made. This note was therefore delivered and put into circulation in fraud of the rights of the makers, and recovery thereon could not be had in an action by

the payee named therein. This is conceded by the plaintiffs. However, the note was upon its face regular and negotiable in form, and duly signed when delivered to the agent by defendants. It was transferred to the plaintiffs by a written guaranty of payment, absolute in its terms. Such an unauthorized delivery to the payee and its subsequent transfer to the plaintiffs, the present holders, does not make the note subject to defenses by the makers, providing the plaintiffs are holders of the note in due course, without notice, for value. It simply compels the plaintiffs to show that they are such holders. The possession of the note alone, duly indorsed to them, is not sufficient to protect them as against the showing of an unauthorized and fraudulent delivery and putting into circulation. Such a showing shifts the burden upon them to show that they are bona fide holders. If they succeed in showing that they are such bona fide holders, they are protected as against any defenses in favor of the makers. The makers having permitted the note regularly signed by them to remain in the agent's hands, and trusted him with its possession for the purpose of procuring the other signatures, cannot complain of his breach of trust, and they should be the sufferers, rather than those who innocently purchased the note without any notice of the manner in which it was put into circulation. The rule in cases of notes delivered without authority, when held by bona fide holders, is the same as in cases of notes thus held that were fraudulent in their inception. The good-faith holder is protected against existing equities or defenses in favor of the makers upon his showing that he holds as an innocent purchaser, after having parted with a valuable consideration therefor without notice and before maturity. *Vickery* v. *Burton,* 6 N. D. 245, 69 N. W. Rep. 193; *Knowlton* v. *Schultz,* 6 N. D. 417, 71 N. W. Rep. 550.; *Mooney* v. *Williams,* 9 N. D. 329, 83 N. W. Rep. 237; *Landauer* v. *Improvement Co.,* (S. D.) 72 N. W. Rep. 467; *Dunn* v. *Bank,* (S. D.) 77 N. W. Rep. 111; *Bank* v. *Barber,* (Iowa) 9 N. W. Rep. 890; *Bank* v. *Dakin,* (Kan. Sup.) 39 Pac. Rep. 180, 45 Am. St. Rep. 299; *Bank* v. *Flath,* 10 N. D. 291, 86 N. W. Rep. 867; *Smith* v. *Livingston,* 111 Mass. 342.

It now remains to be considered whether the plaintiffs are holders of the note in suit in due course of business for value, without notice of any defenses claimed thereto. Under the verdict of the jury, there was no extension of the time of payment of the the indebtedness from the payee of the note to the plaintiffs. No money or property was paid or delivered to the payee at the time of the transfer. There was no new contract entered into in express terms between the payee and plaintiffs at the time. The indebtedness from the payee to the plaintiffs was a pre-existing one, and there was no change in the status of such indebtedness by virtue of such transfer. The plaintiffs parted with nothing nor did the payee

receive anything at the time by virtue of such transfer of the note. Under these facts, concerning which no contradiction arises, are the plaintiffs innocent holders of the note for value, without notice, and in the usual and ordinary course of business? That the note was not due at the time of its receipt by the plaintiffs is conceded. It is conceded by the plaintiffs' attorney that, if they are not such bona fide holders, no recovery can be had by them in this action. The defendants claim that no recovery can be had against them for the reason that the plaintiffs parted with nothing of value, and did not incur any new obligation, at the time the note was received by them. The plaintiffs claim a recovery by reason of the fact that by the indorsement of the note to them by a guaranty absolute in form they became a party to the note, and such guaranty necessarily incurred upon them the duties, responsibilities, and obligations of a holder of negotiable paper, and that by assuming such duties an obligation was assumed by them which brings them within the definition of the words "valuable consideration," laid down in the statute. Such definition is as follows: "A valuable consideration is a thing of value parted with or a new obligation assumed at the time of obtaining a thing, which is a substantial compensation for that which is obtained thereby. It is also called simply value." Section 5130, Rev. Codes. "An indorsee in due course is one who in good faith, in the ordinary course of business and for value before its apparent maturity or presumptive dishonor and without knowledge of its actual dishonor, acquires a negotiable instrument duly indorsed to him or indorsed generally, or payable to the bearer, or one other than the payee who acquires such an instrument of such indorsee thereof." Section 4884, Rev. Codes.

The question is therefore presented whether the plaintiffs are indorsees in due course, they having taken the note simply as collateral to a pre-existing debt, without entering into any new contract whatever, save such as devolved upon them, if any, by operation of law, by virtue of becoming holders thereof under the guaranty of payment indorsed thereon and duly signed by the payee. The fact that this note was transferred under a guaranty of payment, and not by indorsement in blank or to another's order, is immaterial, as the holders, by virtue of the transfer by a guaranty of payment, are indorsees in due course in either case, if they bring themselves within the provisions of the statute defining indorsees in due course. *Dunham* v. *Peterson,* 5 N. D. 414, 67 N. W. Rep. 293, 36 L. R. A. 232, 57 Am. St. Rep. 556.

Upon the question of the rights of holders of negotiable paper taken in due course before maturity as collateral security for a pre-existing debt, there is a radical conflict of authority. The courts sustaining the right of the holders to recover in such cases as against equities or defenses in favor of the holders, do so, generally, upon the ground that, by becoming holders of such negotiable paper through indorsement, they become parties to it, and as such assume

obligations in reference to the enforcement of the same. *Brooklyn City & N. R. Co.* v. *National Bank of the Republic,* 102 U. S. 14, 26 L. Ed. 61. Those courts denying the rights of such holders to recover as against defenses in favor of the makers do so upon the ground that the holders parted with nothing in the nature of a new consideration when they acquired such note or other negotiable paper; that merely accepting the note as collateral security for a pre-existing debt, without any agreement for extension of time or forbearance of some kind, and without making any new promise, so far as the original debt is concerned, or any new obligation, is not receiving the collateral for anything of "value," within the meaning of that term as laid down in the statute or the law merchant. *Coddington* v. *Bay,* 20 Johns, 637, 11 Am. Dec. 342. In this case the guaranty of payment was unconditional. If the note was not paid at maturity, the guarantors became absolutely liable thereon. In such event the plaintiffs were not compelled to proceed against the makers of the note. Failure to do so, or delay in doing so, would nôt exonerate the guarantors. Section 4646, Rev. Codes. Upon the maturity of the note the plaintiffs could proceed against the guarantors upon the guaranty, or against the Leeds Importing Company upon its original obligation to the plaintiffs. There were no prior indorsers to be held by protest in case of nonpayment. Under the verdict of the jury and the evidence in the case, no new obligation was undertaken by the plaintiffs as a matter of fact, and none developed upon them as a matter of law. They were, therefore, not indorsees in due course of business, and did not acquire the note as such, within the meaning of § § 5130 and 4884, quoted herein, and did not incur any new duty in becoming guarantees of the note. It is said that such holders of commercial paper acquired as collateral security for payment of pre-existing ogligations should be protected in order to maintain the absolute integrity and stability of negotiable paper so negotiated before maturity. Holders of negotiable notes or paper by indorsement before maturity are never protected against defenses against such notes in favor of the makers, unless the same were acquired for value or upon some benefit conferred or obligation incurred. No reason is apparent why the rule should be enlarged in cases where such notes are acquired as collateral security. The language of the statute will not sustain such a construction. Our decision in this case is based upon the sections of the statute quoted, construed in reference to the particular facts in this case, to the effect that there was no value given or duty incurred when the note was taken by the plaintiffs.

A different question, not necessary to be decided in this case, would be presented had plaintiffs acquired this note by guaranty or indorsement, where prior indorsements had been made of the note. In such case the duty would devolve on the plaintiffs to see that such prior indorsers were duly charged by demand notice,

and the note protested in case of nonpayment. In this case the guaranty was unconditional; protest, demand, and notice of nonpayment having been waived by the terms of the guaranty, although without such waiver no duty in reference thereto devolved on the guarantees. In the leading case, holding that the holders of commercial paper duly indorsed to them are protected against defenses in favor of the makers, when such paper is held as security for a preexisting debt, the supreme court of the United States says: "It [plaintiff] received the note under an obligation imposed by the commercial law to present it for payment and give notice of nonpayment in the mode prescribed by the settled rules of that law. We are of the opinion that the undertaking of the bank to fix the liability of prior parties by due presentation for payment, and due notice in case of nonpayment,—an undertaking necessarily implied by becoming a party to the instrument,—was a sufficient consideration to protect it against equities between the other parties of which it had no notice." *Brooklyn City & N. R. Co.* v. *National Bank of the Republic,* 102 U. S. 14, 26 L. Ed. 61. Such is the reason given by many courts for holding that a pre-existing debt is a good consideration to sustain the rights of holders of paper indorsed as security for such pre-existing indebtedness. But we are not considering or deciding a case based on such facts. In this case the plaintiffs assumed no new responsibility, duty, or obligation when they took this note, and therefore parted with no value for it, and are not holders in due course, within the meaning of the statute quoted above. The note in suit did not mature until nearly 2½ years after its transfer to the plaintiffs. It was given for $800, but the indebtedness of the Leeds Importing Company to plaintiffs was upwards of $15,000 at that time. Hence it does not appear that the plaintiffs could have accepted any immediate obligation as holders thereof towards its collection. Our decision is based upon the fact that the plaintiffs did not acquire this note for value, as defined in the provisions of the Code cited, and incurred no obligations by acquiring it. The plaintiffs have failed to show that they are indorsees of the note in due course, as defined in such statute.

The order of the district court is affirmed. All concur.