THE NORTHERN TRADING COMPANY, a Corporation, v. THE DREXEL STATE BANK OF CHICAGO, a Corporation.

(164 N. W. 151.)

Negotiable instruments — promissory note — possession — presumption — valid title — conflict in testimony — questions of fact — submitted to court — jury waived — decision not conclusive — entitled to careful consideration.

1. Where one has possession of a promissory note or a negotiable instrument,

NOTE.—The general rule is in accord with the case of NORTHERN TRADING CO. v. DREXEL STATE BANK in holding that a negotiable instrument duly executed and

the presumption is that he has valid title thereto, and that it was delivered to him. Where there is a conflict of testimony as to the title and delivery of such instrument, and the questions of fact as to title and delivery are submitted to the court without a jury, and the court decides upon the matter of title and delivery, while the decision of the trial court is not conclusive upon this court, nevertheless the judgment of the trial court is entitled to be carefully considered by this court; and especially is this true in a case such as the one at bar where there is just one witness who testifies for the plaintiff and one for the defendant, and their testimony is in entire conflict. The trial court under such circumstances has the advantage of seeing the witnesses on the stand, noting their demeanor, their candor, the willingness with which they testify, and many other characteristics or qualities of the witnesses, while this court is entirely without such facilities to aid it in its final determination as to the credibility of the witness.

Negotiable instruments — possession of — presumption — good title — that it was delivered — due course.

2. Under § 6901, Compiled Laws of 1913, where one has possession of a negotiable instrument, the presumption is that he has a valid title thereto and that it was delivered to him. Under § 6944, Compiled Laws of 1913, every holder of negotiable paper is presumed to be a holder in due course.

Negotiable instruments — consideration — pre-existing debt.

3. Under § 6910, Compiled Laws of 1913, an antecedent or pre-existing debt constitutes value, and is sufficient to support a simple contract.

Negotiable instruments — indorsement in blank — effect of — payable to bearer — negotiated by delivery.

4. Under § 6919, Compiled Laws of 1913, a blank indorsement is one which specifies no indorsee, and where an instrument is so indorsed, it is payable to bearer and may be negotiated by delivery.

Opinion filed July 21, 1917.

Appeal from the judgment of the District Court of Traill County, *Charles A. Pollock,* Judge.

Affirmed.

*Pollock & Pollock,* for appellant.

delivered, and payable to bearer, or indorsed in blank, will pass by delivery, and that title to such instrument will pass by delivery to a bona fide purchaser for value, without notice, without reference to the title of the one from whom it was obtained, although the instrument may have been stolen or otherwise unlawfully obtained from the owner, as will be seen from note in 19 L.R.A.(N.S.) 107, on rights of owner of negotiable paper, payable to bearer, or indorsed in blank, as against bona fide purchaser from one unlawfully in possession thereof.

The respondent gave no new consideration or value for the disputed collateral, but under its own theory took it as security for a pre-existing debt of Kittel and for its own advantage and benefit, and is therefore not privileged as a purchaser in good faith and for value, under the law. Porter v. Andrus, 10 N. D. 558, 88 N. W. 567; Comp. Laws 1913, § 6937; Roseman v. Mahony, 86 App. Div. 377, 83 N. Y. Supp. 749.

The burden was upon the bank to show that it acquired the paper in good faith and for value, and that it was a holder in due course, and it has not sustained such burden. Comp. Laws 1913, § 6944; Knowlton v. Schultz, 6 N. D. 417, 71 N. W. 550; Walters v. Rock, 18 N. D. 45, 115 N. W. 511.

The giving of the notes and mortgage constituted but one transaction, and none of the said instruments are privileged as negotiable instruments. Jones Mortg. § 71; Joyce, Defenses to Commercial Paper, § 365; Oster v. Mickley, 35 Minn. 245, 28 N. W. 710; Garnett v. Meyers, 65 Neb. 280, 91 N. W. 400, 94 N. W. 803; Brooke v. Struthers, 110 Mich. 562, 35 L.R.A. 536, 68 N. W. 272; Allen v. Dunn, 71 Neb. 831, 99 N. W. 680; Gilbert v. Nelson, 5 Kan. App. 528, 48 Pac. 207; Donaldson v. Grant, 15 Utah, 231, 49 Pac. 779.

*Lawrence & Murphy,* for respondent.

The indorsement was the same as if the paper had been indorsed to bearer, no indorsee being named. Comp. Laws 1913, § 6894, subd. 5, § 6919.

The fact of possession of the instrument raises prima facie the presumption of valid title thereto. Comp. Laws 1913, § 6901.

The holder of such paper is presumptively a holder in due course. Comp. Laws 1913, § 6944; Drinkall v. Movius State Bank, 11 N. D. 10, 57 L.R.A. 341, 95 Am. St. Rep. 693, 88 N. W. 724; Rev. Codes 1899, § 59, chap. 100; 2 Randolph, Com. Paper, § 730; Million v. Ohnsorg, 10 Mo. App. 432; 1 Dan. Neg. Inst. § 573, and cases cited.

The holder of negotiable paper as collateral security for a pre-existing debt is now and expressly brought within the law by the provisions of the Uniform Negotiable Instruments Act. Rev. Codes 1905, § 6327, Comp. Laws 1913, § 6910.

This act has abolished the old rule that such a holder was not a holder "for value." Brewster v. Shrader, 26 Misc. 480, 57 N. Y.

Supp. 606; Brooks v. Sullivan, 129 N. C. 190, 39 S. E. 822; People's Sav. Bank v. Bates, 120 U. S. 565, 566, 30 L. ed. 757, 758, 7 Sup. Ct. Rep. 679; Weaver v. Barden, 49 N. Y. 286; Cary v. White, 52 N. Y. 138; Wood v. Robinson, 22 N. Y. 567; Mingus v. Condit, 23 N. J. Eq. 313; Brooklyn City & N. R. Co. v. National Bank, 102 U. S. 14, 26 L. ed. 61; National Revere Bank v. Morse, 163 Mass. 381, 40 N. E. 180; Roberts v. Hall, 37 Conn. 205, 9 Am. Rep. 308; Bridgeport City Bank v. Welch, 29 Conn. 475; Hanold v. Kays, 64 Mich. 439, 8 Am. St. Rep. 835, 31 N. W. 420; Fitzgerald v. Barker, 96 Mo. 661, 9 Am. St. Rep. 375, 10 S. W. 45; Spencer v. Sloan, 108 Ind. 183, 58 Am. Rep. 35, 9 N. E. 150; Quinn v. Hard, 43 Vt. 375, 5 Am. Rep. 284; Armour v. McMichael, 36 N. J. L. 92; Fisher v. Fisher, 98 Mass. 303; Roberts v. Hall, 37 Conn. 205, 9 Am. Rep. 308; Giovanovich v. Citizens' Bank, 26 La. Ann. 15; Maitland v. Citizens' Nat. Bank, 40 Md. 540, 17 Am. Rep. 620; Robinson v. Lair, 31 Iowa, 9; Bonaud v. Genesi, 42 Ga. 639.

The exception to the general rule is based upon considerations of commercial policy, and is peculiar to commercial paper. Schaeffer v. Fowler, 111 Pa. 451, 2 Atl. 558; Martin v. Citizens Bank & T. Co. 94 Tenn. 176, 28 S. W. 1097; Roach v. Woodall, 91 Tenn. 206, 30 Am. St. Rep. 883, 18 S. W. 407; Jenkins v. Schaub, 14 Wis. 1; Comp. Laws 1913, § 6912.

It is held that a person who takes negotiable paper as a holder in due course has a good title, and is not affected by the want of title of the party from whom he takes it. Voss v. Chamberlain, 139 Iowa, 569, 19 L.R.A.(N.S.) 106, 130 Am. St. Rep. 331, 117 N. W. 269.

A statement that collateral security has been deposited for the performance of the promise contained in the note is a recital only, which does not affect its negotiability. Wise v. Charlton, 4 Ad. & El. 486, 111 Eng. Reprint, 979, 6 Nev. & M. 364, 2 Harr. & W. 49, 6 L. J. K. B. N. S. 80; Fancourt v. Thorne, 9 Q. B. 312, 115 Eng. Reprint, 1293, 15 L. J. Q. B. N. S. 344, 10 Jur. 639.

A provision merely authorizing the sale of the collateral if the note be dishonored, does not have this effect. Perry v. Bigelow, 128 Mass. 129; Towne v. Rice, 122 Mass. 67; Biegler v. Merchants' Loan & T. Co. 62 Ill. App. 560; Arnold v. Rock River Valley Union R. Co. 5 Duer, 207; Brinen v. Muskegon Sav. Bank, 174 Mich. 414, 140 N. W. 529.

GRACE, J.  The complaint states a cause of action to foreclose a certain real estate mortgage covering section 31, in township 144, range 51, Traill county, North Dakota, given to secure $5,400, as evidenced by six certain promissory notes; five notes being for $1,000 each, and one note for $400.  The notes and mortgage were signed by Frederick Siegert and Ida Siegert.  They, however, make no defense to the foreclosure, the defense being by the Drexel State Bank of Chicago, they claiming that the notes and mortgage in question were assigned to them as collateral security.  The complaint contains all the regular allegations of an ordinary foreclosure by action.

The answer, among other things, alleges the indebtedness of Richard C. Kittel and the Northern Trading Company to the defendant in the sum of $8,500, represented by a promissory note which the defendant, the Drexel State Bank of Chicago, alleges was secured by the delivery to the defendant of the notes mentioned in the complaint and the assignment of the mortgage which secured said notes; and the answer alleges that such notes and mortgage were to be held as a pledge and security to the debt due from Kittel and for the purpose of paying such debt. The defendant further alleges the possession of the said notes and mortgage since the time of the delivery to them, and claims to be the owner and holder of the notes and mortgage described in the complaint, and claims that plaintiff has no right or interest in said notes and mortgage until the debt of Richard C. Kittel to the defendant is paid and satisfied; and that there is now due to the defendant from said Richard C. Kittel and the plaintiff a sum of over $11,000.  Defendants add in the prayer that, if the said mortgage be foreclosed and the property sold, the proceeds be delivered to the defendant in payment and satisfaction of the debt due and owing from Richard C. Kittel to the defendant.

The plaintiff in its reply states the following: The plaintiff admits that the defendant, Drexel State Bank of Chicago, secured possession of the notes and real estate mortgage described in the plaintiff's complaint herein, and several assignments of said mortgage, and has retained and still retains the possession thereof, and in this behalf alleges that the same were not by the plaintiff, nor any other person or party, delivered to said defendant, but were taken clandestinely by the agent and representative of said defendant, without any authority from the plaintiff and without the plaintiff's consent, and against its

will. The plaintiff admits there was certain indebtedness of the plaintiff and Richard C. Kittel owing to and held by the defendant at the time said defendant secured possession of said papers as aforesaid, but in this behalf alleges that all of the indebtedness of the plaintiff to the defendant has long since been paid in full.

The facts in the case are substantially as follows: The plaintiff is a corporation organized and existing by virtue of the laws of the state of North Dakota, its principal place of business being at Casselton, North Dakota. The Drexel State Bank of Chicago is a corporation organized and existing by virtue of the laws of the state of Illinois. On the 15th day of August, 1913, Frederick Siegert and Ida Siegert executed and delivered to Murray Bros. & Ward Land Company, a corporation, their promissory notes in writing for the sum of $5,400, being five notes for $1,000 each, and one note for $400, which were secured by a real estate mortgage upon all of section 31–144–51. Murray Bros. & Ward Land Company afterwards assigned such mortgage to the Minneapolis Trust Company, which assignment was filed February 5, 1914, in Traill county, North Dakota. On or about the 1st day of May, 1914, Minneapolis Trust Company reassigned such mortgage to Murray Bros. & Ward Land Company. About the 2d day of May, 1914, Murray Bros. & Ward Land Company assigned such mortgage to the plaintiff, the Northern Trading Company, and sold, assigned, indorsed, transferred, and delivered the notes in question to the Northern Trading Company, which notes were indorsed without recourse.

During the times mentioned herein Richard C. Kittel, of Casselton, North Dakota, was vice president, director, stockholder, and managing agent of the plaintiff, the Northern Trading Company, and the president, director, and managing agent of the First National Bank of Casselton, and William F. Kittel was the treasurer, director, and stockholder of the plaintiff, the Northern Trading Company, and cashier, stockholder, and director of the First National Bank of Casselton, North Dakota. Between the 1st day of January, 1914, and the 20th day of January, 1916, M. B. Cottrell was the president and director of the defendant, the Drexel State Bank of Chicago, Illinois, and its duly authorized agent in the transaction of the business involving said defendant during said time. On or about the 9th day of July, 1914,

Richard C. Kittel was indebted to the Drexel State Bank of Chicago approximately in the sum of $11,000, which was represented by a promissory note delivered by Richard C. Kittel to the defendant, and which was on the 9th day of July, 1914, in the possession of the defendant, and owned by it, and was past due.

It appears that in the first part of July, 1914, Mr. Cottrell came to Casselton for the purpose of procuring the payment or security for the indebtedness of the Northern Trading Company to the Drexel State Bank of Chicago, and also the indebtedness of Richard C. Kittel to the same bank. That the first matter considered on such occasion, which was on the 9th day of July, 1914, was the indebtedness claimed to be due from the Northern Trading Company to the Drexel State Bank of Chicago, which it seems was satisfactorily secured by the assignment of the Northern Trading Company of a mortgage for $24,000, which was secured on eighteen sections of land, which debt it seems was fully paid or thereafter paid, and the collateral reassigned. At the same time Cottrell demanded further security for the debt of Richard C. Kittel. The Drexel State Bank turned back certain bank stock of the State Bank and received in lieu thereof 125 shares of stock of the First National Bank of Casselton of par value, which was duly assigned to the Drexel State Bank in writing. Thus far there is no dispute as to the questions of fact, and the main contention arises over the question of fact whether or not Richard C. Kittel did turn over the notes and mortgage in question with the intention that they should become security for his personal obligation to the Drexel State Bank of Chicago. Richard C. Kittel contends that he never turned such notes and mortgage over, and never authorized the possession thereof by the Drexel State Bank, but that the Drexel State Bank, through its agent Cottrell, clandestinely took such notes and mortgage from the desk in the office of Richard C. Kittel in the First National Bank at Casselton. In other words, that said Cottrell clandestinely, secretly, and without any knowledge on the part of Richard C. Kittel, took all of such notes and the mortgage, which fact was not discovered by Kittel until some time thereafter.

The questions to be considered in the case are, therefore, narrowed down to whether or not Richard C. Kittel did place in the possession of the Drexel State Bank of Chicago, through their agent Cottrell,

the notes and mortgage in question as security, which Richard C. Kittel denies doing, and if it is found that Richard C. Kittel did place such notes and mortgage with the Drexel State Bank of Chicago as security for his own personal obligation to such bank, without any knowledge or notice of, or acquiescence in, such act by, the Northern Trading Company, then, whether his acts in so doing are binding upon the Northern Trading Company.

Mr. Kittel admits that at the same time Cottrell adjusted the matter of the indebtedness of the Northern Trading Company with the Drexel State Bank as to security, he talked with him about making some adjustment of the personal debt of Richard C. Kittel. Richard C. Kittel claims that the notes and mortgage in question were inspected by Cottrell as collateral offered on the Northern Trading Company claim, and that Cottrell rejected the notes and mortgage for such purpose, but that Cottrell did select other collateral, which was the Merlien mortgage for $24,000 secured as hereinbefore stated. Richard C. Kittel also testified that he secured his personal indebtedness by 125 shares of the stock of the First National Bank of Casselton. Kittel claims that he notified the Drexel State Bank of Chicago that they had no right to this paper, and says that he did that as soon as he knew they had the paper, which should have been about the time the note was sent to the First National Bank for collection. Kittel testifies that the notes in question were never indorsed either in lead pencil or any other way, and that he never had any intention of delivering them, not even as security for the Northern Trading Company. He gives as his excuse for not being more insistent on the return of such papers or making no more complaint, that he owed money, and was in default, and was constantly in danger, as he expressed it, "of being shut down on, and I could not complain at that time." He claims that his personal indebtedness to the bank at that time was $10,000, and is about $6,000 at the present time. As a part of the settlement as to his own personal debt, he also agreed to pay $500 a month on the indebtedness due from him personally to the Drexel State Bank of Chicago. Some of the monthly payments at least were made.

Mr. Cottrell, the agent of the Drexel State Bank of Chicago, testified substantially as follows:

As I remember it, we were in Mr. Kittel's office in the First National

Bank of Casselton. I have forgotten what security we had for the Northern Trading Company note, but in settlement he gave me additional—or, we accepted a mortgage note of something over $20,000 of Merlien, with the guaranty of the company; that was delivered to me in his office. After we had accepted that, I asked him what he was going to do with his individual paper that was outstanding, that I was dissatisfied with the collateral we had at that time, consisting of state savings bank stock, which, as you know, is not satisfactory collateral, only to the bank itself, as they hold a prior lien on the stock when there is any indebtedness. I requested him to give me something else, and he gave me at that time 125 shares of the First National Bank of Casselton, which I accepted with the agreement that he would give something else or other kind of collateral, as we did not consider bank stock the best of collateral. At the same time that he handed me the bank stock, he gave me this mortgage of Siegert's.

Q. Had you ever heard of this mortgage before?

A. Not that I remember of.

Q. Never had it until he handed it to you?

A. I don't ever remember of seeing it.

Q. What did he say when he handed it to you?

A. Well, I cannot remember the conversation at the time, but it was handed to me the same as the other.

Q. At the time or immediately after your demand for additional security on his personal note?

A. Yes, sir; it was handed to me the same as the other stock. He went out and got it out of his safety deposit box and gave it to me.

Q. And at that time you received these plaintiff's exhibits one to ten, did you know anything about the claims of the Northern Trading Company to that paper?

A. I did not.

Q. Was there anything said to you by Mr. Kittel other than what you have already related on the stand?

A. Not that I can recollect at present.

Q. What did you do with these papers, plaintiff's exhibits one to ten, after you left Casselton?

A. I delivered them to the Drexel State Bank on my return to Chicago.

37 N. D.—34.

Q. As far as you know, Mr. Cottrell, who has held these papers since that time?

A. They have been held by the Drexel State Bank.

Q. Has Mr. Kittel been in Chicago at different times since that time?

A. Yes, sir.

Q. Did he at any time prior to the 15th day of January, 1916, talk with you on the occasion of any of these visits as to the claims of the Northern Trading Company to that paper?

A. He did not.

It will be seen, therefore, that there is a direct conflict between the testimony of Richard C. Kittel and Cottrell, the agent of the Drexel State Bank, concerning the delivery of the notes and mortgage in question to the Drexel State Bank as collateral security to the obligation of Richard C. Kittel. All the testimony in this case, including that concerning the delivery of the notes and mortgage in question as collateral security for the individual debt of Richard C. Kittel, was submitted to the trial judge, who passed upon the questions of both law and fact in the case. Both Kittel and Cottrell were present in person and testified. The trial judge had the opportunity to observe the demeanor of the witnesses on the stand while under oath, he could note their candor or want of candor, the willingness with which they testified, and many other characteristics or qualities of the witnesses. This court has no such opportunity, and while the judgment of the trial court is not conclusive as against this court, nevertheless the judgment of the trial court is entitled to very careful consideration, and especially so where there is a direct conflict of testimony relating to the same subject-matter, for in such case the determination and judgment of the trial court may be of inestimable value in finally determining the merits of the controversy in a case such as the one at bar. Where there are just two witnesses testifying concerning the subject-matter of the action, and their testimony is in diametric conflict, by what rule of construction can this court say from the paper testimony which of such witnesses is really making the truthful statement. A case such as the one at bar has the character of a case in which weight should be given, if ever, to the judgment of the trial court. Adopting the findings of the trial court in this case, the Drexel State Bank rightfully

held the notes and mortgage in question as collateral security to the individual debt of Richard C. Kittel. The notes in question were indorsed in blank by Murray Bros. & Ward Land Company, and an assignment of the mortgage was also made by them in blank, and where the indorsement is made in blank and no indorsee is specified, such an instrument so indorsed is, by law, payable to bearer and may be negotiated by delivery. Comp. Laws 1913, § 6919. Where one has possession of an instrument, the presumption is that he has a valid title thereto and that it was delivered to him. Comp. Laws of 1913, § 6901. Every holder of negotiable paper is presumed to be a holder in due course. Comp. Laws 1913, § 6944. Drinkall v. Movius State Bank, 11 N. D. 10, 57 L.R.A. 341, 95 Am. St. Rep. 693, 88 N. W. 724. In the case at bar the defendant is not only presumed to be the holder in due course, but his testimony shows that he came into the possession of such paper in due course before the maturity of such notes and mortgage for a valuable consideration, as defined by § 6910, Compiled Laws of 1913; and the testimony of the defendant further shows that at the time he came into the possession of such paper he had no notice of any defect of the title, or, in other words, that he had no notice of any claim of the Northern Trading Company to such notes and mortgage. The case of Porter v. Andrus, 10 N. D. 558, 88 N. W. 567, was a case in which the opinion was filed December 17, 1901, and said action was upon a cause of action which had accrued in the year 1893, which was prior to the time the Negotiable Instruments Law became effective, and prior to the time of its adoption. Under § 6910 of the Compiled Laws of 1913, an antecedent or pre-existing debt constitutes value and is sufficient to support a simple contract. The appellant claims that their theory is corroborated by the fact that the notes in question were not indorsed. This, however, is not borne out by a thorough analysis of the instruments themselves. The notes were indorsed in blank, and, being in that state, they would therefore be of the same nature as if they were made payable to bearer so far as their negotiability is concerned. The mortgage securing said notes was also assigned in blank, so that the notes indorsed as they were, were negotiable without any further signature, just the same as if they had been made payable to bearer. The blank assignment being with such mortgage, there was

no need of any other assignment of the mortgage in order to turn the whole transaction over to Drexel State Bank as collateral security, and § 6915, Compiled Laws of 1913, provides, where an instrument is payable to bearer, it is negotiated by delivery.   Section 6919, Compiled Laws of 1913, provides among other things as follows: "An indorsement in blank specifies no indorsee, and an instrument so indorsed is payable to bearer and may be negotiated by delivery."   In the Supreme Court of the United States the rule has been made by its decision that a bona fide holder taking a negotiable instrument as payment of or as security for an antecedent debt is a holder for valuable consideration, and entitled to protection against all equities between the antecedent parties.   Brooklyn City & N. R. Co. v. National Bank, 102 U. S. 14, 26 L. ed. 61.   The same rule is followed in many of the states.

As before stated the trial court in this case was in more advantageous position, and had better opportunity, to pass upon the credibility of the witnesses than we; and while we are not bound to do so, we are convinced that, in view of all the testimony in this case, its contradictory character, the limited number of witnesses, and all the facts and circumstances connected with the case, we must accord considerable weight to the judgment of the trial court in the case.

The judgment appealed from, therefore, is in all things affirmed, with costs.