# FARMERS STATE BANK OF DICKINSON, NORTH DAKOTA, a Domestic Corporation, Respondent, v. C. KOFFLER, Appellant.

(70 A.L.R. 1223, 232 N. W. 307.)

12

Opinion filed July 30, 1930.   Rehearing denied October 14, 1930.

*Jacobsen & Murray,* for appellant.

*J. W. Sturgeon,* for respondent.

NUESSLE, J. This action is brought to recover on a check on which payment was stopped by the drawer.

The facts were stipulated, and so far as pertinent, are briefly as

follows: On September 15, 1928, the defendant drew a check on the Farmers & Merchants Bank of New England in which he had an account, payable to the order of Kenneth Davis. The consideration therefor was $250 and the check was intended to be for that amount. The sum payable was written in figures, as "$250.00," but in the body of the instrument it was expressed as "Two Hundred and 50/100ths Dollars." Davis endorsed the check. Then it was lost by him or stolen from him. On or about the 1st of October the check was presented by someone to the plaintiff bank, which cashed it in the usual course of business. Plaintiff was not acquainted with Davis or with the bearer who presented the check. Thereafter Davis and the defendant learned that plaintiff had cashed the check and the defendant notified the drawee bank not to pay the same. The check was transmitted by the plaintiff in the usual course for collection and remittance, but acting under the notification from the defendant the drawee bank refused to pay the same and it was protested. In the meantime and after the defendant had learned that the plaintiff had cashed the check, defendant gave Davis another check for $250 in lieu of the original. Plaintiff now brings this action to recover. The cause was tried to the court without a jury, the facts being stipulated. The court found for the plaintiff and ordered judgment in his favor for the sum of $250, plus protest fees, together with interest thereon from the date of the protest. Defendant appeals.

Defendant in his answer, after admitting the execution of the check, denies the endorsement by Davis the payee, and further "denies that the plaintiff in due course and in the regular course of business cashed said check and alleges that in the payment of said check the plaintiff was negligent and did not ascertain the identity of the payee named in said check nor the identity of the bearer of said check to whom the alleged payment was made and that plaintiff did not require the bearer of said check to endorse said check and that plaintiff showed lack of good faith in taking and paying said check; that the bearer of such check to whom plaintiff made payment was not the payee named in said check and was not the owner of said check and had no title to or right of possession to said check; that the payee named in said check had never at any time delivered said check to the bearer to whom plaintiff made payment; that defendant stopped payment on said check

at the drawee bank for the reason that said check was unlawfully ·in possession of the party to whom plaintiff made payment and that payment was made by plaintiff without the endorsement of bearer; that defendant as soon thereafter as he had obtained information that said check had been stolen from the payee, caused notice to be given plaintiff to that effect and to not pay said check. . . ."

A holder in due course can recover upon a negotiable instrument endorsed in blank by the payee and stolen from him. Comp. Laws 1913, § 6901 (Negotiable Instruments Law), § 16); Massachusetts Nat. Bank v. Snow, 187 Mass. 159, 72 N. E. 959; Poess v. Twelfth Ward Bank, 43 Misc. 45, 86 N. Y. Supp. 857; Ehrlich v. Jennings, 125 Am. St. Rep. 795, and note (78 S. C. 269, 58 S. E. 922, 13 Ann. Cas. 1166); Brannon, Neg. Inst. Law, p. 148, and cases cited; 3 R. C. L. p. 1000, and cases cited.

As appears from the stipulation of facts, the payee Davis had endorsed the check in blank. Accordingly it became payable to bearer and negotiable by delivery. Comp. Laws 1913, §§ 6894 and 6919; (Negotiable Instruments Law, §§ 9 and 34); Northern Trading Co. v. Drexel State Bank, 37 N. D. 521, 164 N. W. 151. The plaintiff was the holder of the instrument thus endorsed and had given value for it. So the presumption arose that plaintiff was a holder in due course and that there was a valid delivery of the instrument by all parties prior to the plaintiff. See §§ 6901 and 6944, Comp. Laws 1913 (Negotiable Instruments Law, §§ 16 and 59); Drinkall v. Movius State Bank, 11 N. D. 10, 57 L.R.A. 341, 95 Am. St. Rep. 693, 88 N. W. 724; Northern Trading Co. v. Drexel State Bank, 37 N. D. 521, 164 N. W. 151, supra; Baird v. Lorenz, 57 N. D. 804, 61 A.L.R. 1385, 224 N. W. 206. And this was so though the instrument had been stolen and put into circulation by the thief. Poess v. Twelfth Ward Bank, 43 Misc. 45, 86 N. Y. Supp. 857, supra. Under § 6937, Comp. Laws 1913 (Negotiable Instruments Law, § 52):

"A holder in due course is a holder who has taken the instrument under the following conditions:

"1. That it is complete and regular upon its face.

"2. That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact.

"3. That he took it in good faith and for value.

"4. That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

Therefore, presumptively, the plaintiff was a holder under these conditions.

The defendant concedes that the instrument was complete and regular upon its face and had never previously been dishonored; that the plaintiff became the holder of it before it was overdue and for value. He insists, however, that the bearer of the check for whom plaintiff cashed it, had a defective title within the meaning of that term as defined in § 6940, Comp. Laws 1913 (Negotiable Instruments Law, § 55), which provides:

"The title of a person who negotiates an instrument is defective within the meaning of this chapter when he obtained the instrument, or any signature thereto, by fraud, duress, or force and fear, or other unlawful means, or for an illegal consideration, or when he negotiates it in breach of faith or under such circumstances as amount to a fraud."

And further insists that the presumption that the plaintiff was a holder in due course arising from the fact of possession of the instrument was destroyed by the showing that the title of the bearer who negotiated the instrument to the plaintiff was defective. He says that this result follows under § 6944, Comp. Laws 1913 (Negotiable Instruments Law, § 59), which provides:

"Every holder is deemed prima facie to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some other person under whom he claims acquired the title as a holder in due course. But the last mentioned rule does not apply in favor of a party who became bound on the instrument prior to the acquisition of such defective title."

And so he insists that the burden is shifted and cast upon the plaintiff to show affirmatively that it took the instrument in good faith and without notice of any defect in the title; that the facts as stipulated do not have this effect. In support of his contentions he cites and relies upon First Nat. Bank v. Bratsberg, 52 N. D. 876, 204 N. W. 665; Stevens v. Barnes, 43 N. D. 483, 18 A.L.R. 10, 175 N. W. 709;

Tamlyn v. Peterson, 15 N. D. 488, 107 N. W. 1081; Knowlton v. Schultz, 6 N. D. 417, 71 N. W. 550; Vickery v. Burton, 6 N. D. 245, 69 N. W. 193.

The difficulty with the defendant's contentions in these respects is that he wholly disregards the final sentence of § 6944, supra: "But the last mentioned rule does not apply in favor of a party who became bound on the instrument prior to the acquisition of such defective title." The cases cited are cases where the fraud rendering the title defective was in the inception of the instrument. Here there is no defect in the title so far as the maker is concerned. The action is not brought against Davis to charge him as endorsee. It is brought against the defendant as maker. The defendant became bound on the instrument at the time he delivered it to Davis. Davis endorsed the instrument and made it payable to bearer. As against Davis, defendant had no defense. Defendant is now seeking to interpose a defense which might have been available to Davis only.

In Prouty v. Roberts, 6 Cush. 19, 52 Am. Dec. 761, it was held no defense to an action on a note by an endorsee against the maker that the note was obtained from the payee by means of fraudulent representations of which the endorsee had knowledge when he received the note. And in Kinney v. Kruse, 28 Wis. 183, the court held that fraud in putting a note in circulation which will operate as a defense or change the burden of proof must be a fraud against the defendant. Chief Justice Dixon there said: "The fraudulent putting in circulation of a negotiable instrument which operates to change the burden of proof and call upon the plaintiff to prove his title as a *bona fide* holder, is where this is done fraudulently *as to the defendant or maker,* and not where it is so done as to the payee or some intermediate holder or party to the paper." The last sentence of § 5944, supra, was apparently intended to codify the rule of Kinney v. Kruse to the extent, at least, of continuing the burden of proof on the defendant in such a case as the one at bar. See Brannon, Neg. Inst. Law, p. 551; Crawford, Neg. Inst. Law (4th ed.) p. 117. Unless this last sentence is so interpreted it is difficult, if not impossible, to give it any reasonable meaning. We conclude, then, that § 5944, supra, considered as a whole, does not have the effect of shifting to the plaintiff the burden

of proving that he is the holder in due course of the note on which he sues merely by a showing on the part of the defendant that the title to the instrument was defective as against some intermediate endorsee. See Voss v. Chamberlain, 139 Iowa, 569, 19 L.R.A.(N.S.) 106, 130 Am. St. Rep. 331, 117 N. W. 269; Unaka Nat. Bank v. Butler, 113 Tenn. 574, 83 S. W. 655; Ladd & T. Bank v. Small, 126 Wash. 8, 216 Pac. 862; Baird v. Lorenz, 57 N. D. 804, 61 A.L.R. 1385, 224 N. W. 206. It follows then that in the instant case the presumption that plaintiff had received the instrument in due course operated in his favor and was sufficient to make his case and entitle him to a recovery, unless the stipulated facts had the effect of affirmatively establishing notice of the defect in the title or lack of good faith.

Now the check was in all respects regular excepting for the discrepancy between the figures indicating the sum payable and the statement thereof in writing. There was nothing about it to challenge the attention of the plaintiff when it was cashed excepting this discrepancy. It was taken in the usual course of business. Full value was paid for it. It is true that the plaintiff did not attempt to identify the bearer for whom it cashed the check, although neither Davis nor the bearer was known to it. But plaintiff naturally assumed that the bearer was Davis. When the check was presented the bearer turned to the desk or stand provided for that purpose and there seemed to make the endorsement. There was nothing about his conduct with respect to the matter which was in the least suspicious. Under all these circumstances there was nothing about the transaction which would charge the plaintiff with notice of a defect in the holder's title or tend to show want of good faith. Comp. Laws 1913, § 6941 (Negotiable Instruments Law, § 56); Unaka Nat. Bank v. Butler, 113 Tenn. 574, 83 S. W. 655; Swift v. Smith, 102 U. S. 442, 26 L. ed. 193; Ladd & T. Bank v. Small, 126 Wash. 8, 216 Pac. 862.

Defendant's last contention is that the writing in the check prevails over the figures and therefore the check was, so far as the plaintiff was concerned, a check for $200.50, rather than for $250.00. There is merit to this contention. Section 6902, Comp. Laws 1913 (Negotiable Instruments Law, § 17), provides:

"Where the language of the instrument is ambiguous, or there are omissions therein, the following rules of construction apply:

"1. Where the sum payable is expressed in words and also in figures and there is a discrepancy between the two, the sum denoted by the words is the sum payable; but if the words are ambiguous or uncertain reference may be had to the figures to fix the amount. . . ."

This provision applies to the instrument here, in question. The sum denoted by the words controls. The judgment from which the defendant appeals will therefore be modified by reducing the amount thereof to accord with the sum payable, as denoted by the words, together with protest fees and interest, and as so modified affirmed.

BURKE, Ch. J., and BURR, BIRDZELL and CHRISTIANSON, JJ., concur.