Kinney vs. Kruse and another.

KINNEY vs. KRUSE and another.

PROMISSORY NOTE: (1, 2) *What fraud in putting note into circulation constitutes a defense.* (3) *Rights of bona fide holder of note as a security. Rights of one taking under him.*

1. The fact that one who held possession of a note for the payee put it in circulation in fraud of his rights, is no defense in a suit by the holder against the maker; nor does it change the burden of proof, so as to require the plaintiff to show in the first instance that he is a *bona fide* holder for value.

2. The fraud in putting the note into circulation which will operate as a defense, or change the burden of proof, in such an action, must be a fraud against the defendant.

3. The president of a railroad company, who was authorized by a vote of the directors to enter into any contract or agreement with any person which he might think best for the interest of the company, transferred to one of its creditors, as security for a debt then due, notes belonging to the company, including the one in suit; and subsequently assented to a transfer thereof by W. to C. as security for a loan from the latter to the former. Afterwards the note, by successive transfers for value, came into plaintiff's possession. *Held,*

(1.) That plaintiff had the same right which C. would have had upon the note: to wit, a right to enforce payment thereof to the full amount of W.'s indebtedness to C. not otherwise paid, or realized from the other securities; and this without reference to any defense which the maker might have to the note as against the railroad company.

(2.) That plaintiff's rights derived from C. were not affected by his knowledge, when he took the note, of defendant's equities against the company, or by the knowledge of any of the transferees between himself and C.

APPEAL from the Circuit Court for *Washington* County.

Foreclosure of a mortgage executed in 1857, by *Henry Kruse and wife* to the Milwaukee and Fond du Lac Air Line Railroad Company, to secure the note of said *Henry Kruse*, of the same date, running to said company or order for $2,400, payable in ten years, with interest payable annually. The defendants contested the action on the grounds, first, of a want of of power in the railroad company to receive the mortgages; secondly, of a judgment avoiding the note and mortgage, rendered in a prior suit against the railroad company " and persons unknown "; and thirdly, that the company had procured the instruments to be executed by fraudulent representations, and that the plaintiff had purchased or obtained the supposed note and mortage long after due, without paying any good or valuable consideration therefor, and with notice of the equities between the parties.

On the trial, there was evidence tending to prove, and the court found, *inter alia*, the following facts: At the date of the giving of the mortgage, said railroad company was a subsisting corporation, under chapter 323, Private and Local Laws of 1854, and chapter 78, Private and Local Laws of 1857. The company attached the note and mortgage in suit to its own bond for the same amount, made and executed in due form, by a clause in which said note and mortgage were assigned to the bearer of the bond as security for its payment. About the 1st of July, 1857, the company delivered the three instruments thus attached together, to one Julius White, as security for a joint indebtedness from said company and the Milwaukee and Superior Railroad

Company to said White for $3,000. White, on the 12th of May, 1857, borrowed of one Carver $6,000, on his own private account and for his individual benefit, and gave Carver his note therefor, and as collateral security delivered to Carver $10,000 of securities of the Milwaukee and Superior Railroad Company, and afterwards, in July, 1857, by request of one Alton who was the president of both companies, agreed with Carver to exchange, and did exchange, the securities last above mentioned, for a like amount of the securities of the Milwaukee and Fond du Lac Railroad Company, commonly called farm mortgage bonds, among which was the note and mortgage here in suit. Carver had no notice or knowledge of any misapplication of said securities or any defense against them. Said indebtedness to White from said two railroad companies, had none of it been paid, unless by the transfer of said securities. Prior to 1866, White's note of $6,000 and said collaterals had been separated, in some way not appearing from the testimony, and said note had come unindorsed into the hands of one Clapp, of Chicago, Ill. In or about the year 1866, White compromised his said note with Clapp, by paying him $1,000 therefor, and took up the note, the collaterals not being in Clapp's hands. White never sold said securities, but they were in some way and by some one (the testimony not showing how or by whom) put upon the market, and prior to or in the fall of 1863, came, *bona fide* and for full value paid, into the possession of one Waite, who, in the fall of 1863 or winter of 1864, sold and transferred said $10,000 worth of Milwaukee and Fond du Lac Air Line Road securities, including the note and mortgage in suit, to one Walker, of Chicago, Ill., for $2,500 then paid by Walker, which was all the securities were then worth. Said purchase was made in the usual course of business ; and Walker had no notice or knowledge of any misapplication of said note and mortgage or of any defense thereto.

Afterwards, in 1865 or 1866, and before this suit was commenced, Walker hypothecated or pledged said securities to the

plaintiff to secure a loan of money made at the time by plaintiff to Walker, and plaintiff received the same in the usual course of business and in good faith, and the debt for which they were pledged has not been paid. The note and mortgage were delivered to the railroad company in payment for twenty-four shares of the capital stock of the company, which stock was delivered to *Henry Kruse* about July 1, 1857, and is now retained by him, and never offered to be returned to said company. At the same time a contract in writing was entered into between *Kruse* and the company, which is set out in the finding, and the substance of which was, that the company, for a certain consideration, undertook to pay the interest on the note, and save *Kruse* harmless therefrom. The court further found that the allegations of fraud in the answer were not proven.

As conclusions of law, the court held that the railroad company was legally empowered to receive and transfer said note and mortgage; that the receipt and transfer thereof, as shown, were legal transactions, and the note was legally indorsed by the company; that the note and mortgage were valid; that no defense against them had been shown, even as between the original parties; that Walker was a *bona fide* purchaser for full value, before maturity; and that the plaintiff was an endorsee of the note, in good faith, for value paid, before maturity, and entitled to maintain this action and to recover the full amount secured by said note and mortgage.

Judgment in accordance with the prayer of the complaint; and defendants filed exceptions to the findings and conclusions of the court, and appealed.

*Finches, Lynde & Miller*, for appellants, contended, among other things, 1. That defendant had a good defense as against the railroad company at least to the amount of the *interest* on the note, which the company had bound itself to pay. 2. That a good defense, as against the company, for the whole amount of the note, had also been shown, upon the ground that it had been obtained by fraudulent representations. 3. That the note

and mortgage were fraudulently put in circulation; that Alton, as president of the company, had no right to pledge them to White for the purpose shown by the evidence, and White was, therefore, not a *bonâ fide* holder as against the company; that the subsequent disposal of them, while held in pledge, without demand on White or notice to him, was also fraudulent; and that neither Walker nor the plaintiff could be regarded, upon the evidence, as purchasers in good faith, in the usual course of business. To protect the purchaser of negotiable paper, it must have been purchased in the usual course of business, before maturity; the purchase must be free from such suspicion as would put a reasonable man on inquiry; a good fair price must be paid; the greater the discount at which the paper is purchased, the more necessity there is for extreme care in the purchase; when the paper has been fraudulently put into circulation, the burden of proof is upon the holder to show that he paid *full* value; and circumstances *calculated to excite suspicion* are enough to impeach the title, in the absence of proof of good faith. 5 Sandf., 157; 48 Me., 163; 13 Iowa, 589; 1 Curtis, 390; 8 Conn., 336; 32 Vt., 135; 1 E. D. Smith, 154; 12 Pick., 545; 8 Gray, 254; 10 Eng. C. L., 154; 32 id., 339; 114 id., 425; 28 N. Y., 600; 1 Wis., 471. When the inadequacy of price is very gross and manifest, the court will infer fraud or imposition from that fact alone.[*] 2 Yerg., 294; 4 Dessaus., 652; 2 Litt., 118; 4 Iredell Eq., 171; 8 Humph., 520; 9 Ala., 692; 6 Johns. Ch., 222; 15 How. (U. S.), 60.

*E. Mariner* (with *David S. Ordway*, of counsel), for respondent, contended, upon the evidence, that no fraudulent representations had been shown which would avoid the note and mortgage even as against the railroad company; that it was

---

[*] Mr. Walker testified that he bought the $10,000 of securities (bonds of the Milwaukee and Fond du Lac R. R. Co., with farm mortgages and notes attached) for $2,500; and that he supposed he was able to get them at this price, "because they were securities not well known in market, and the interest was not paid, and a party obliged to realize would have to take what he could get."

therefore a matter with which defendant had no concern, what the company did with the instruments (*Kennedy v. Knight*, 21 Wis., 345; *City Bank v. Perkins*, 29 N. Y., 554); that even if the paper had been put in circulation fraudulently, this would be no defense against the plaintiff, if he showed himself to be a *bona fide* holder for value (Edwards on Bills, 2d ed., § 691); that it must have been put in circulation fraudulently *as to the defendant*, or the burden of proof is not changed (*Ross v. Bedell*, 5 Duer, 467); that Carver, being a *bona fide* holder, to secure payment of $600 with interest, had a right either to pledge or sell the note and mortgage in suit; that plaintiff, standing in Carver's shoes, may recover on them; and that there was nothing in the purchase of such securities at 25 per cent. on their face to show that the purchase by Walker was in bad faith.

DIXON. C. J.    The fraudulent putting in circulation of a negotiable instrument which operates to change the burden of proof and call upon the plaintiff to prove his title as a *bona fide* holder, is where this is done fraudulently *as to the defendant or maker*, and not where it is so done as to the payee or some intermediate holder or party to the paper.    If, therefore, Alton, as president of the railroad company, fraudulently put the note and mortgage in circulation *as to the company*, it is not perceived how that circumstance is available to the defendants as a distinct ground of defense, or for the purpose of changing the burden of proof. The case of *Ganard v. Pittsburg and Connelsville Railroad Company*, 29 Pa. St., 154, cited and relied upon by counsel for the defendants on this point, is entirely unlike.    That was an action of trover by the railroad company, to recover damages for the conversion of a negotiable security belonging to it, which had been fraudulently and without authority put in circulation by its president.    The defendant claimed to hold the instrument, a negotiable bond, in payment of, or as collateral security, for a private debt due him from the president of the company.    The court found that it was neither taken in payment nor as collat-

eral security by the defendant (plaintiff in error), and that he had notice of the want of authority and fraudulent intent of the president. If the railroad company here had brought suit for the conversion of the note and mortgage, against White, to whom Alton transferred them, and it had appeared that the transfer was upon or in security for the private or individual debt of Alton, who acted without authority, the case referred to would have been apposite, and the decision in point. But this case differs altogether. Alton, the president, had the fullest authority, by resolution of the board of directors, to enter into the negotiation and make the transfers and exchanges which he did.

The resolution was in these words : "*Resolved*, That C. R. Alton, president of the Air Line Railroad Company, be, and he is hereby, authorized and empowered to enter into any contract or agreement with any corporation, company or individual, which he, in his judgment, may think best for the interest of this company, and any contract or agreement or thing done by him as president of the company, is hereby fully ratified and confirmed." And the transactions here were in the proper business and affairs of the company. White was a creditor of the company in the sum of $3,000, and wanted his pay, and applied to Alton to obtain it, and the note and mortgage in suit, with others, were transferred to him by Alton as security *for the debt of the company.* Subsequently White, with the knowledge and consent of Alton, deposited the notes and mortgages with Carver as collateral security on a loan of $6,000 made by White of Carver. Under these circumstances it is difficult to perceive why White, and after him Carver, were not each of them *bona fide* holders for value of the note and mortgage, and entitled to enforce payment of the same to the extent of their interest as against the defendants, discharged of any equities or matters of defense existing between the defendants and the railroad company. This would seem to be so within the very principles laid down in the case above cited, and cer-

tainly as they have always been understood and applied by this court. White did not pay his note given on the loan from Carver, but years afterwards took it up on payment of $1,000, and let the securities go. It does not appear when, where, or to whom, or upon what consideration, Carver transferred the securities. They subsequently came to the hands of one Waite, who claimed to own them, and sold them to the witness Walker for $2,500. Walker, as he testifies, transferred them to the plaintiff as collateral security for about fifty cents on the dollar. The notes and mortgages which have been thus transferred and sold amounted to $10,000, without the interest.

If, as we have assumed, Carver was a *bona fide* holder to the extent of his interest (for the title or interest of White became merged or lost in that of Carver), then it follows that the plaintiff, as the successor of Carver, may hold and enforce payment the same as Carver could have done, and that notwithstanding the plaintiff may have had notice of the invalidity, or fraud, or want of consideration, at the time he purchased or received the note and mortgage, or may not have paid value for the same. The transferee or purchaser of a note voidable for want of consideration or other cause as against the maker, from an innocent indorsee or holder for value without notice, is entitled to recover, though he took the note with full knowledge of such want of consideration or other voidable defect. *Smith v. Hiscock*, 14 Maine, 449; *Hascall v. Whitmore*, 19 Maine, 102; *Masters v. Ibberson*, 8 Man., Gran. & Scott [65 E. C. L.], 100; Byles on Bills, [\*110]; Bayley on Bills, 350; Edwards on Bills and Promissory Notes, 312. The principle is, that the promise being good to the prior indorsee or holder, free from objection on the ground of fraudulent or illegal consideration, he has the power of transferring it to others, with the same immunity, as an incident to the legal right which he had acquired in the instrument. It is no defense, therefore, that a plaintiff, being a transferee of a bill or note, had notice of a fraudulent or illegal considera-

tion, if he can deduce title from a prior party not shown to have had any such notice.

The plaintiff deduces title from Carver, who was clearly an innocent holder for value. If Carver had brought suit, what would have been his rights? His title would have been none the less valid because he held the note and mortgage as collateral security. As respected the legal title, there could have been no distinction between the advance made by him and the case of an actual purchaser. *Gibson v. Stevens*, 8 How. (U. S.), 400; *Harrington v. Smith*, 8 Pick., 419; *Adams v. Wheeler*, 10 Pick., 199; *Mitchell v. Black*, 6 Gray, 105. And his title would have been the same even if he had so held them upon an advance less than their nominal value. He held them upon a loan of twice or three times their nominal value, and which, beyond the sum afterwards repaid by White to get up his own note, considerably exceeded the nominal value of any two of the notes and mortgages deposited, though short of the nominal value of all of them. If Carver had brought suit, judgment must have gone in his favor for the full amount due on the note and mortgage. That would have been his right as a *bona fide* holder for value, at least until the defendants had shown that his demand was reduced below such amount by payments or moneys realized from the other securities deposited. Carver could have sued upon and proceeded to enforce payment of any and all the notes and mortgages, until the debt due him, with interest, was fully paid and satisfied. And there are some authorities which would seem to hold that in actions at law his right of recovery would not have stopped here, but that he might have compelled payment of the entire sums secured by all the notes and mortgages, although his own demand was less. *Smith v. Hiscock, supra; Bosanquet v. Dudman*, 1 Starkie R., 1. But see Story on Promissory Notes, § 195, and cases cited; and especially see authorities referred to in *Bange v. Flint*, 25 Wis., 550, in which a different rule was held. As the representative and person standing in the place of Carver, who was an inno-

cent holder for value, the plaintiff was, therefore, entitled to recover; and it becomes unnecessary to inquire whether Waite must be presumed to have been an innocent holder, or whether Walker's purchase made him such, or into the relations existing between the plaintiff and Walker. And it is also unnecessary to examine or discuss the question of fraud in the procurement of the note and mortgage by the railroad company, as all inquiry into that question is cut off by the *bona fide* relation in which the plaintiff, as the successor of Carver, stands to the paper. The judgment must be affirmed.

*By the Court.* — Judgment affirmed.