DREXLER *v.* SMITH.

*(Circuit Court, D. Oregon.* May 9, 1887.)

1. NEGOTIABLE INSTRUMENTS—NOTE—ACTION ON—TRANSFER BY PARTNER.

It is no defense to an action on a promissory note against the maker thereof that it was transferred to the plaintiff by one of a firm who were the payees thereof, in payment of his individual debt.

2. SAME—ALTERATION BY HOLDER.

The payee of a note payable on or before a certain day wrote on the face of it, before maturity and without the consent of the maker, extending the time of payment thereof to a later day certain. *Held,* that this change of time of payment was not such an alteration of the note as avoided it, because it left the maker free to pay the note on or before such day, while it restrained the payee from compelling him to do so before that time.[1]

3. SAME—ALTERATION—PLEADING—DEMURRER.

A defense to an action on such note which sets up this change in the time of payment thereof, and alleges that it was fraudulently done for the purpose of prolonging the negotiability of the note, so as to enable the payee wrongfully to negotiate the same, without stating that the maker had a defense to an action thereon while the same was in the hands of the payee, which he could not make against a transferee before maturity, does not show how the maker could be injured by such negotiation, and is therefore bad on demurrer.

4. SAME—TRANSFER—COUNTER-CLAIM.

A demand due the maker of a note from the payee thereof, for money paid to the use of the latter, and work and labor performed for him, prior to the

---

[1] Respecting what alterations will be held material, see Weaver v. Bromley, (Mich.) 31 N. W. Rep. 839, and note.

In Weaver v. Bromley, *supra,* the insertion of the words "or bearer" in a promissory note was held immaterial.

maturity of said note and the transfer thereof, the latter being made before maturity, cannot be the subject of a counter-claim under section 72 of the Oregon Code of Civil Procedure, in an action on said note against the maker by an indorsee thereof.

(*Syllabus by the Court.*)

Action to Recover Money.

*Lewis B. Cox*, for plaintiff.

*John Gearin*, for defendant.

DEADY, J.   This action was commenced in the state circuit court for the county of Umatilla, on August 26, 1885, and after the filing of an amended complaint, in pursuance of an order requiring the original to be made more definite and certain, and the filing of a demurrer thereto, was removed to this court by the plaintiff, under subdivision 3 of section 639 of the Revised Statutes, on account of local prejudice.   A transcript of the record was filed here on November 2, 1886, and an answer filed on February 23, 1887, containing sundry special defenses and counter-claims, to which a demurrer by the plaintiff has been argued and submitted.

It appears from the complaint that the action is brought on two promissory notes made by the defendant on March 4, 1884, at Walla Walla, and payable to the order of J. H. Cavanagh and R. B. Mackenzie, as partners under the firm name of Mackenzie & Cavanagh, with interest at ten per centum per annum, payable yearly, in default whereof the principal and interest was to become presently due,—the one note being for $1,500, payable on or before January 1, 1885, and the other for $2,000, payable on or before January 1, 1886; that after the making of the notes, and before the maturity of either of them, Mackenzie & Cavanagh indorsed the same in blank, and transferred them, for value, to one Catherine Cavanagh; that afterwards, and about October 1, 1884, at the request of the defendant and with the consent of said Catherine, who was then the owner and holder of said $1,500 note, the time of payment thereof was extended until July 1, 1885, and "a memorandum of the same duly indorsed on the face of said note;" that thereafter, and about the ———— day of November, 1884, and before the maturity of either of said notes, said Catherine, for a valuable consideration, transferred and delivered the same to the plaintiff, who is now the owner and holder thereof; and that said notes are due and wholly unpaid.

The answer contained sundry denials and defenses to each cause of action.   Some of the latter are qualified with an "except as hereinafter stated."   But as each denial or defense must be sufficient in itself, and stand or fall without reference to any other allegation or pleading, such a denial is of no effect.   *Hall* v. *Austin*, Deady, 107; Code Civil Proc. Or. § 72.

There are two defenses to the first cause of action stated in the complaint, and arising on the note for $1,500.

The first one is to the effect that, soon after the making of the note, Cavanagh wrongfully, and without the knowledge or consent of Macken-

zie, indorsed the name of the firm thereon, and transferred it to his sister, Catherine Cavanagh, in payment of his individual debt due her; that afterwards said Cavanagh, as the pretended attorney of said Catherine, pretended to transfer said note to the plaintiff without the knowledge or consent of Mackenzie, and without any consideration therefor being received by said firm, wherefor said note was at the commencement of this action, and now is, in truth and in fact the property of said firm; and that the defendant has paid said firm all money due in said note, which is now fully satisfied and discharged.

The second defense is to this effect: That shortly after the making of said note, and while it was in the possession of Cavanagh, he wrongfully, and without the consent of the defendant, altered the same by writing on the face thereof the words, "The time of payment of this note is hereby extended to July 1, 1885," for the purpose of prolonging the negotiability thereof, so as to enable him to wrongfully negotiate the same. There is also a counter-claim to this cause of action, to the effect that on August 1, 1884, the defendant paid to Huntington, Hopkins & Co., at the request and for the use of said firm, the sum of $2,900, which sum they agreed to repay him, but have not done so; and that the same, with interest at 8 per centum per annum, now amounts to $3,343.33, and is a legal counter-claim against any sum that may be found due on this note.

To the second cause of action, as stated in the complaint, and arising on the note for $2,000, there is one defense and two counter-claims. The defense is the same as the first one made to the first cause,—that the indorsement and transfer of the note were made by Cavanagh in payment of his individual debt, and without the knowledge or consent of Mackenzie. The first counter-claim is the same as that pleaded to the first cause of action,—the payment of the $2,900 to Huntington, Hopkins & Co., for the benefit of the payee of the note. The second counter-claim is an account for work and labor performed for the firm between July 1, 1883, and September 1, 1884, at the agreed wages of $125 per month; that there was due and owing from said firm to the defendant, on account of said work and labor, on September 1, 1884, the sum of $1,750, no part of which has since been paid; and that at said date said firm was the owner and holder of said note, and said sum is a legal counter-claim against the same, which is hereby satisfied and discharged.

The ground of the demurrer to these defenses and counter-claims is that they do not constitute "a defense" to the action. But a counter-claim is not and does not purport to be a defense; but, as its name implies, is a cross-demand. The ground of the demurrer to these should have been that the facts stated therein do not constitute a cause of action or counter-claim against the plaintiff and in favor of defendant in the action. But such was the cause of demurrer, as developed on the argument, and the demurrer may be amended accordingly.

The first defense is not sufficient. The wrongful indorsement of the firm notes by Cavanagh to his sister in payment of his individual debt to her, as alleged therein, is not a matter of which the defendant can complain or be heard to object, for the very sufficient reason that it does

not concern him. He is not harmed by it, or his liability in any way affected. The case of *Kinney* v. *Kruse*, 28 Wis. 183, is a clear and instructive case on this point; and no case has been cited to the contrary. In the language of the syllabus, it decides: "The fact that one who held possession of a note for the payee, put it in circulation in fraud of his rights, is no defense in the suit by the holder against the maker." Cavanagh had the authority to indorse these notes in the firm name, and deliver them to his sister, in payment even of his individual debt, as against all the world, except Mackenzie; and, even as against him, with his consent, which may be presumed from an acquiescence of much less than two and a half years. *Gansevoort* v. *Williams*, 14 Wend. 138; 1 Daniel, Neg. Inst. §§ 366, 367.

The second defense to the $1,500 note involves a question about which the authorities are not uniform. According to many of them any alteration of a negotiable instrument, by the holder thereof, "changing (1) its date, or (2) the time or (3) place of payment, or (4) the amount of principal, or (5) interest to be paid, or (6) the medium or currency in which payment is to be made, or (7) the number or the relations of the parties, or (8) the character and effect of the instrument, as a matter of obligation or evidence," avoids it as a legal obligation, even in the hands of a subsequent *bona fide* holder. 2 Daniel, Neg. Inst. §§ 1373–1375; 1 Whart. Ev. § 626. Two reasons are given for this rule: (1) To prevent, as a matter of public policy, the commission of fraud in relation thereto by the holder of such an instrument; and (2) to preserve the identity of the instrument. 1 Greenl. Ev. § 565.

But the tendency of the authorities and of legislation is to confine the application of this harsh rule to such alterations as import a fraudulent or improper purpose on the part of the person making them. 1 Greenl. Ev. §§ 566–568.

In *Cambridge Sav. Bank* v. *Hyde*, 131 Mass. 77, the court held that a memorandum made by the holder of a note, on the back thereof, with the consent of the maker, but without the knowledge of the surety, that thereafter the rate of interest thereon will be less than that stated in the body of the note, is not an alteration thereof, and does not avoid or affect the same as to the surety.

A reasonable exposition of the rule is contained in section 778 of the Code of Civil Procedure:

"The party producing a writing as genuine, which has been altered, or appears to have been altered, after its execution or making, in a part material to the question in dispute, shall account for the appearance or alteration. He may show that the alteration was made by another without his concurrence, or was made with the consent of the parties affected by it, or otherwise properly or innocently made, or that the alteration did not change the meaning or language of the instrument."

And first, this extension of time is not made in a way to excite or justify a suspicion of any wrongful purpose. It is made by a distinct writing on the face of the instrument which in no particular affects the identity of the original, or changes a letter or figure of its composition. It

does not purport to be contemporaneous with the note, but imports that it was written subsequent to the making thereof.

The note was made payable on or before January 1, 1884. The extension of the time for payment until July 1, 1885, must be construed as subject to the same qualification as the original promise to pay; that is, the right of the maker to pay "on or before" the day named. In legal effect, therefore, this extension is nothing more than a declaration by the payee of the note that he would not enforce the collection of the same before the day named, while the maker might exercise his option, and pay as much sooner as he could or would. The time of payment was not positively changed as to him. But his option to pay or not was extended to July 1, 1885. This was a benefit to him, but not to the payee. Such an alteration does not import a fraudulent or wrongful intent, but the contrary. So far, at least, it appears to have been "innocently made," even if made as alleged in the defense, without the consent of the maker.

But it is alleged that the alteration was made with intent to prolong the negotiability of the note, so as to enable Cavanagh to transfer it before maturity. But it is not apparent how this, if true, could result in injury to the defendant. It is not alleged that he had any defense to the payment of the note which he would thereby be prevented from making. It does not appear that the note is subject to any equities in favor of the defendant, as against Mackenzie & Cavanagh. And a mere set-off, such as is contained in these counter-claims, is not such an equity. 2 Daniel, Neg. Inst. § 1435. It must be something growing out of the transaction in which the note originated, and existing at the time of the transfer. 1 Daniel, Neg. Inst. 520; *National Bank* v. *Texas*, 20 Wall. 88.

But it does not appear from this defense, which must be complete in itself, that the defendant had *any* defense or set-off to this note, and therefore the mere averment in the defense that the extension was made with intent to defraud him amounts to nothing. It does not appear how it could defraud or even prejudice him. It is alleged in the complaint that the extension was made on October 1, 1884. The defense does not take issue with that allegation, but only avers that it was made "some time" after the execution of the note. On demurrer, this must be taken as an admission that it was made before maturity, as alleged in the complaint, and simply for the purpose of extending the time for payment for the benefit and convenience of the defendant.

The counter-claims cannot be maintained as a set-off against the notes in the hands of the plaintiff. The statement of each counter-claim must contain the facts sufficient, under the circumstances, to support an action thereon. These claims appear to have been accrued to the defendant before the maturity of the notes, and before their transfer. But it is not alleged in the statement of either of them that the transfer of the notes, or either of them, was not made until after maturity. The authorities are divided on the question whether these claims could be set off against these notes in the hands of any one but the payees thereof, even if they were transferred after maturity. But if they were transferred before maturity,

as alleged in the complaint, and not controverted in the counter-claims, they are agreed that they cannot be so set off. 2 Daniel, Neg. Inst. §§ 1435-1437.

There are some superfluous and inconsistent allegations in these defenses and counter-claims which may be noticed. For instance, that the notes in question are now owned by Mackenzie & Cavanagh, notwithstanding the admitted transfer of them to Catherine Cavanagh, in payment of a debt due her by Cavanagh; and that, by reason of the existence of these counter-claims, they are paid, satisfied, and discharged. Now, the mere existence of a counter-claim does not satisfy or discharge a debt due from the party in whose favor it exists. Neither is it payment of such debt, nor are these so pleaded.

The demurrer is sustained.