[No. 17890. Department One. July 31, 1923.]

## LADD & TILTON BANK, *Respondent*, v. E. S. SMALL, *Appellant*.[1]

BILLS AND NOTES (64)—HOLDER IN DUE COURSE—PAYEE. The payee of a check is not a "holder in due course" within the definition of Rem. Comp. Stat., § 3443.

SAME (71, 121)—TITLE AND RIGHTS ACQUIRED—BURDEN OF PROOF. The burden of showing that there is no defect in the payee's title to a note is met where it appears that he received the check (which had been signed in blank by the maker and entrusted to his agent) in total ignorance of the fact that the maker had stopped payment and that the agent had no authority to fill in, utter, and deliver the check.

SAME (71, 121). One who signs and places in the hands of another checks in blank, puts the same in circulation unless the payee has notice of cancellation or stopping of payment; and therefore, "became bound on the instrument prior to the acquisition of such defective title," within Rem. Comp. Stat., § 3450, restricting, in such case, the rule that the burden is upon the holder of a defective instrument to show acquisition through a holder in due course.

SAME (118, 141)—EXECUTION OF INSTRUMENT—NOTE IN BLANK—GOOD FAITH AND NOTICE OF DEFECT—EVIDENCE—SUFFICIENCY. A bank,

[1]Reported in 216 Pac. 862.

taking a check which the maker, a buyer of potatoes, had signed in blank and given to his agent, is not put on inquiry as to a cancellation of the check or the stopping of payment by the fact that a draft, with bill of lading for potatoes attached, had been sent to it for collection and the check given in payment was drawn on a bank in another city for a considerable sum, especially where the check showed on its face that the payee was a dealer in potatoes.

Estoppel (35-1)—Grounds—Apparent Title to Personal Property—Bills and Notes—Fraud. One who signs checks in blank and places them in the hands of an agent who cashed the same in a transaction in excess of his authority, the bank having no notice of the fraud, must suffer the loss as the one of two innocent parties who was the first negligent actor.

Appeal from a judgment of the superior court for Yakima county, Gilliam, J., entered October 3, 1922, upon findings in favor of the plaintiff, in an action on a check, tried to the court. Affirmed.

*Snively & Bounds,* for appellant.
*Richards & Fontaine,* for respondent.

Holcomb, J.—Respondent sued appellant upon a dishonored and protested check for the sum of $1,564.34. Appellant had, on or about January 16, 1920, delivered to George Arenz a number of blank checks signed by him upon his business form of check, for the purpose of purchasing potatoes in large quantities for resale. On about January 19, 1920, George Arenz left Yakima, Washington, and appellant thereupon gave notice to the Yakima Trust Company, the bank on which the checks signed by him issued to Arenz were drawn, to stop payment thereof. A car of potatoes had been bought by Arenz upon his own account and consigned to his brother, Theodore Arenz, in Portland, on about January 20, 1920, and the bill of lading for the car of potatoes, with draft attached, drawn on Theodore Arenz, was sent by the First National Bank of Yakima to respondent, in Portland, which draft

was not taken up when presented to Theodore Arenz. George Arenz went from Yakima to Portland to straighten out other difficulties over shipments of cars of potatoes, and also the one shipped to Theodore Arenz on about January 20. On January 26, George and Theodore Arenz went to respondent, to whom the draft had been sent for collection by the Bank of Yakima. Theodore Arenz introduced his brother George to the manager of the collection department of respondent, who asked for the bill of lading, ascertained the amount of the draft, and then filled in one of the checks signed by appellant for the amount of the draft, $1,564.34, payable to respondent, and took up the draft. George Arenz, having been properly identified, respondent accepted the check; immediately gave credit to the First National Bank of Yakima for the amount, and forwarded the check to the Yakima Trust Company, on which it was drawn, for payment. Payment was refused upon receipt of the check, because Small had stopped payment thereon prior to its arrival.

The check had the name of appellant printed at the top of it, with his business card, the number of the check, the name of appellant printed at the bottom, and below the printed name it was signed by appellant himself when delivered to Arenz, in writing. It was drawn upon the Yakima Trust Company, of Yakima, Washington.

The trial court found, with ample evidence to sustain it, that appellant had no interest in the car of potatoes shipped by George Arenz to Portland about January 20, 1920. This is a finding, in effect, that appellant had no interest in the transaction between George Arenz and respondent, or in the bill of lading and draft attached, and that the check filled in and delivered by George Arenz to respondent was one with-

out authority and without any consideration to appellant.

Appellant first contends that a holder in due course implies that there has been an indorsement, transfer or negotiation of the instrument, and does not effect the original parties to the instrument.

In this the trial court concurred with appellant, and the contention is no doubt correct. Section 3443, Rem. Comp. Stat. [P. C. § 4123] ; *Vander Ploeg v. Van Zuuk,* 135 Iowa 350, 112 N. W. 807, 13 L. R. A. (N. S.) 490 ; *Long v. Shafer,* 185 Mo. App. 641, 171 S. W. 690 ; *St. Charles Savings Bank v. Edwards,* 243 Mo. 553, 147 S. W. 978 ; *Bowles Co. v. Clark,* 59 Wash. 336, 109 Pac. 812, 31 L. R. A. (N. S.) 613.

In the last cited case it was held, per Fullerton, J.:

"The payee of a check drawn by a stranger to him is not a purchaser of the check nor a holder in due course, and if he receives it he is bound to account to the drawer upon demand." (Syllabus.)

It was there also observed:

"The general rule in this respect was not changed by the fact that the respondent was a stranger to the drawer and did not know the purpose for which the check was forwarded to him. If it did not care to assume the responsibility of accounting, it should have refused to receive it. By doing this it could have relieved itself of any liability whatsoever, but when it accepted the check, even though it did not know the purpose for which it was drawn, it obligated itself to account therefor. It owed no voluntary duty of accounting, perhaps, but certainly a duty to account when called upon by the drawer."

The above statements of the law, we conceive, do not apply here for reasons presently to be noticed.

The trial court, notwithstanding its agreement with appellant as to the above contention, considered that, because "defendant left outstanding checks with his

signature, although his trust was not well founded, it is immaterial whether the plaintiff was a holder in due course," and that it would have to find for the plaintiff.

Appellant contends, citing *Keene v. Behan,* 40 Wash. 505, 82 Pac. 884, that the burden was shifted when it was shown that the payee of the check was not a *bona fide* holder without notice, as defined by § 3443, Rem. Comp. Stat. [P. C. § 4123], and that it was then incumbent upon respondent, as one not a holder in due course, to show that there was no defect in the title of the person negotiating; that this burden was not met.

The cited case decided that, in an action by an indorsee of promissory notes, shown to be usurious and void in the hands of the original payee, the burden of proof was upon the holder to show that he acquired the notes before maturity for value and in good faith, without notice of the usury; and that it is not sufficient merely to show that he acquired the notes before maturity for value.

The record here shows without dispute that respondent received the check in total ignorance of the fact that appellant had stopped payment upon the same, or that Arenz had no authority at the time of the transaction with respondent to fill in, utter and deliver the check to anyone for any amount. Thus the burden has been met.

But upon this contention appellant shifts from the position upon the negotiable instrument act that the instrument in question was not a *negotiated* instrument, to a reliance upon other provisions of the negotiable instrument act, as follows:

Section 3450, Rem. Comp. Stat. [P. C. § 4130].

"[Every] holder is deemed prima facie to be a holder in due course; but when it is shown that the title of

any person who has *negotiated* (italics ours) the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as holder in due course. But the last-mentioned rule does not apply in favor of a party who became bound on the instrument prior to the acquisition of such defective title.''

The last sentence of the above section is not quoted by appellant, but we think it is very material if the section applies at all, for the reason that, under the provision of that sentence, appellant had become bound upon the instrument prior to the acquisition of defective title by respondent. His signing and placing in the hands of another checks in blank, puts such checks in circulation for any amount, and to any payee that the drawer names, unless the particular payee to whom such checks may have been issued and delivered had notice that the checks were cancelled, or payment thereon stopped, or the authority of the drawer of them annulled. There is no showing of any such notice in this case to respondent.

Appellant argues, however, that under the circumstances shown by the evidence, among other things, that the draft which had been sent to respondent for collection had not been honored; that Arenz was a stranger to respondent, with whom it had had no dealings prior thereto; and that the check was drawn upon a bank in another city and state for a considerable sum of money, was sufficient to have put the bank upon its inquiry; and that, when the act of the party who filled in the check constituted a criminal offense, and the payee is not a holder in due course, appellant should not be held liable.

We can see nothing unusual in the transaction between Arenz and respondent sufficient to put respondent upon inquiry. It is a very ordinary matter for

banks to have drafts attached to bills of lading sent to them for collection from distant places; and quite frequently it happens that the consignee refuses the consignment, and refuses to honor the draft. In such cases it is common for the consignor to take up the draft and dispose of the consigned goods himself. In order to do that, it is common in this country for a check on some bank to be given, and if the maker of the check is unknown to the bank, identification of the maker is generally all that is required. Appellant contends, however, that good banking, as shown by the evidence in this case introduced by him and not disputed, requires that respondent should have sent the check, when delivered to it, to the place where it was payable, for collection, and not to have given credit for the amount thereof immediately, and delivered over the property it represented. We can hardly see that this would have made any difference. If the check were valid and collectible it would certainly have made no difference. If invalid for causes unknown to the payee, it ought to make no difference. Furthermore, when the property represented by the draft and bill of lading was to be re-delivered to the consignor, Arenz, undoubtedly the credit represented by the check would have to be fully given. Arenz having checks in his possession signed by the appellant, respondent had a right to presume that Arenz had authority to fill in the necessary amount. It perhaps also had a right to presume that, since the bill of lading and draft were for a car of potatoes and the check signed by appellant and filled out and delivered by Arenz bore upon its face the fact that appellant was in the business of buying and selling potatoes, among other things, as a specialty, as a produce broker, that he had an interest in the transaction.

There were, therefore, not sufficient suspicious circumstances to in any way put respondent upon inquiry as to the defect in the title of Arenz in the check. See *Scandinavian-American Bank v. Johnston,* 63 Wash. 187, 115 Pac. 102; *Citizens Bank & Trust Co. v. Limpright,* 93 Wash. 361, 160 Pac. 1046; *Keith v. Tsue Chong,* 119 Wash. 507, 205 Pac. 834.

Appellant also contends that the principle upon which the trial court decided, that where one of two innocent persons must suffer by the acts of a third, he who has enabled such third person to suffer the loss must sustain it, will not be applied where the wrong was accomplished through the instrumentality of a criminal act, nor where it will cast the loss upon a principal, merely because the one committing the wrongful act was his agent; citing 21 C. J., 1172; *Peoples Sav. Bank v. Kelly,* 136 N. E. (Ind. App.) 30; *National Bank of San Mateo v. Whitney,* 40 Cal. App. 276, 180 Pac. 845; *Rocky Mountain Fuel Co. v. George N. Sparling Coal Co.,* 26 Colo. App. 260, 143 Pac. 815.

In the last cited case it was said, and we think it applies very well here, that:

"The rule that, as between two innocent parties, the loss should fall upon him who made the fraud possible, only protects those who exercise ordinary caution, and against those who voluntarily confer upon others the usual evidence of ownership and apparent authority to dispose of the property."

Here appellant had conferred upon Arenz apparent authority to dispose of the check, and possession thereof indicated his ownership. This was voluntarily done by appellant. While there was probably a fraud committed upon appellant by Arenz, we will not assume that such fraud constituted a criminal act, Arenz, as a witness, contending that there is still a considerable account to be settled between him and appellant.

It was also said in *National Bank of San Mateo v. Whitney, supra,* "where one of two innocent parties must suffer by the act of a third, the loss must fall upon the first negligent actor." It was appellant who first put out the checks in the hands of an agent who proved to be untrustworthy, according to his belief, and undoubtedly that act was what occasioned the loss, and not the negligent act of respondent.

The object of the law of negotiable instruments is to make certain the protection of every innocent holder of negotiable paper, while at the same time protecting every maker against fraud, by well established and well known principles.

In cases too numerous to cite, we have held that, where one of two innocent persons must suffer by the wrongful acts of a third, he who has enabled such third person to cause the loss must sustain it, and we think that rule applies here. It is a rule arising from the facts themselves, not often necessary to be affirmatively pleaded, and has often been raised and applied for the first time in this court. It was urged by appellant himself as against respondent upon the facts and law of this case in the lower court.

The judgment is therefore affirmed.

MAIN, C. J., MACKINTOSH, BRIDGES, and MITCHELL, JJ., concur.