Olive E. Balch, Appellant, v. Edmund J. English and Mary Ann English, Appellees.

Gen. No. 34,558.

Opinion filed March 24, 1931.

GROSSBERG, LYON & BRILL, for appellant.

DENT, DOBYNS & FREEMAN, for appellees.

MR. PRESIDING JUSTICE SCANLAN delivered the opinion of the court.

Olive E. Balch, administratrix *de bonis non* of the estate of Edwin Cupit, deceased, sued Edmund J. English and Mary Ann English in assumpsit. The case was tried by the court, without a jury; there was a finding for defendants, and judgment was entered against plaintiff for costs. This appeal followed.

In a former case Olive E. Balch, individually, sued the instant defendants and obtained a judgment for $2,832.27. She there sued to recover on the bonds that are here involved. We reversed that judgment (247 Ill. App. 429, 433) upon the ground that the evidence showed that the bonds (as between plaintiff and her father, Edwin Cupit) were the property of the latter. Olive E. Balch then sued out letters of administration, etc., of the estate of her father and the present proceedings were brought. Plaintiff declares on five principal promissory notes or bonds, each for $500, and coupon notes, executed by defendants, bearing date May 6, 1920, and maturing May 6, 1925. Defendants' affidavit of merits avers that the bonds were the property of Mayanlake Candy Company; that the latter

company purchased them from Reliance State Bank of Chicago; that the premises of the candy company were burglarized and the bonds stolen; that at the time of the maturity of the bonds the bank, acting for defendants, paid the candy company the total amount of the bonds and interest; that the bonds were not presented for payment by plaintiff until a year after they matured; that they are not negotiable instruments; "that plaintiff's testator did not take the notes in good faith, or for value and was not and is not the holder in due course thereof; that the plaintiff's testator had notice of defects in the title of the person negotiating the bonds," and that "plaintiff and her testator acquired no title thereto."

The court held, as a matter of law, that the bonds were negotiable instruments. Defendants have assigned cross error as to this holding and they contend that the instruments show on their face: "(1) That they are incomplete and that they are part of another contract referred to therein; (2) That the promise to pay is conditional; (3) That the amount payable is uncertain," and that "the instruments are therefore nonnegotiable" and that therefore "the plaintiff, as assignee thereof, cannot recover thereon without allegation and proof of facts showing that plaintiff's predecessor in title acquired the instrument as the bona fide owner thereof, and showing how and when she acquired title thereto." We are satisfied that there is no merit in the contention that the bonds are not negotiable instruments. Section 1 of the Negotiable Instruments Act, Cahill's St. ch. 98, ¶ 21, provides: "An instrument payable in money, to be negotiated, must conform to the following requirements: 1. It must be in writing and signed by the maker or drawer. 2. Must contain an unconditional promise or order to pay a sum certain in money. 3. Must be payable on demand or at a fixed or determinable future time. 4. Must be payable to the order of a specified person or to bearer;

. . . ." Section 3 provides: "An unqualified order or promise to pay is unconditional within the meaning of this Act, though coupled with . . . a statement of the transaction which gives rise to the instrument. . . . ." (Cahill's St. ch. 98, ¶ 23.) Plaintiff and defendants agree that "negotiability must be determined from the language on the face of the instruments." The following is the promissory part of the bonds:

"No. 33        UNITED STATES OF AMERICA        $500
State of Illinois
Six Per Cent First Mortgage Gold Bond
Secured by First Mortgage on
THE GRAND BUILDING
Located at the Northwest Corner Grand
Avenue and Ada Street, Chicago, Illinois.

"The undersigned Edmund J. English and Mary Ann English, his wife, of Chicago, Cook County, Illinois, for value received hereby promise to pay to bearer (or the registered owner hereof) on the 6th day of May 1925, the sum of Five Hundred Dollars ($500.00) together with interest thereon from the date hereof at the rate of Six (6) per cent per annum, payable semi-annually on the 6th days of November and May in each year, on the presentation and surrender of the attached interest coupons as they severally become due. Both said principal and interest are payable in gold coin of the United States of America, of the present standard of weight and fineness, at the office of Reliance State Bank, in the City of Chicago, State of Illinois. The undersigned are held and firmly bound unto the bearer (or the registered owner hereof) for the payment of said principal and interest as herein specified, and do bind themselves and their heirs, executors and administrators for the said sums to said bearer (or the registered owner hereof.)" In our judgment this promise lacks none of the require-

ments of section 1. Defendants rely upon the following provisions on the face of the bonds:

"This bond is one of a series of Forty (40) bonds of like date and tenor (except as to the date of maturity and number), numbered consecutively from One (1) to Forty (40), both inclusive, amounting in the aggregate to the sum of Twenty Thousand and no/100 Dollars ($20,000.00) and secured by a Trust Deed of even date herewith, executed by the undersigned Edmund J. English and Mary Ann English, his wife, to the Chicago Title and Trust Company, of Chicago, Illinois, as Trustee. . . . It is further expressly agreed that if default be made in the payment of any one of said bonds or coupons at the time and place when and where the same becomes due and such default shall continue for thirty days, then the said entire principal sum of this bond shall, at the election of the legal holder hereof, at once become due and payable, such election to be made at any time after the expiration of said thirty days, without notice; and the entire principal sum secured by said Trust Deed may thereupon become due and payable at the election of the legal holder or holders of one or more of said bonds, upon the terms and under the conditions prescribed in the Trust Deed. . . . Said Trust Deed and this bond are parts of the same contract, and are to be construed together."

In *Zollman v. Jackson Trust & Savings Bank*, 238 Ill. 290, 293, the court said:

"The appellant contends that since the notes in question showed upon their face that they were secured by a trust deed appellee cannot be regarded as an innocent holder of such notes, and that the purchaser should be held to have notice of all facts that inquiry would have disclosed. This is a misapprehension of the effect of such recital. A recital upon a promissory note, to destroy its negotiability, must

be of a kind that in some respects qualifies or makes uncertain or conditional the promise. (*Siegel, Cooper & Co. v. Chicago Trust and Savings Bank,* 131 Ill. 569; *Biegler v. Merchants' Loan and Trust Co.,* 164 id. 197.) In the case last above cited it was held that a note which recited that 'this note is secured by a lien upon my interest in certain horses described in agreement this day made between G. W. Leihy and myself,' was nevertheless a negotiable instrument, and that a purchaser for value before maturity held such note free from any latent defenses that the maker might have against the payee." In *Hunter v. Clarke,* 184 Ill. 158, the promissory note contained the words, "according to the tenor of a certain mortgage deed, bearing even date herewith," and in passing upon the question as to whether or not these words destroyed the negotiability of the note, the court said:

"By our statute all promissory notes made by any person, whereby such person promises or agrees to pay any sum of money or article of personal property, or any sum of money in personal property, or acknowledges any sum of money or article of personal property to be due to any other person, are negotiable. If a note is for the payment of money it must be for a fixed sum, payable at all events and at a time specified therein or at a time which must certainly arrive. The objections made to this note are, that when read with the mortgage therein referred to it may become payable before the time specified in the note, and by virtue of the provisions of the mortgage it secures an uncertain sum for taxes and insurance and secures the holder against acts constituting waste.

"*Assuming that the note and mortgage are to be construed as one instrument* so far as the stipulations of the mortgage may affect the note, the first question is whether a provision that upon a certain contingency the holder shall have the option to declare a note due before the time fixed for its maturity will destroy its

negotiability. It is true that the money must be certainly payable, and if it is uncertain whether the money will ever become due the instrument is not a promissory note. Here it is certain that the time would arrive when the note would be payable. It would be due absolutely on March 1, 1894, but upon a certain contingency it might become due earlier. Notes payable at or before a given date are negotiable. (4 Am. & Eng. Ency. of Law, — 2d ed. — 92.) An option of the maker to pay before the date fixed does not affect the negotiability of the note, and it is payable absolutely notwithstanding the option. (*Dorsey v. Wolff*, 142 Ill. 589.) A note payable by installments is negotiable, although the whole is to become due upon a failure in the payment of an installment or the non-payment of interest. (*Chicago. Railway Equipment Co. v. Merchants' Nat. Bank*, 136 U. S. 268.) So a note payable at a date certain, or sooner, upon the happening of some specified event, is held to be due at such date and is negotiable; as, for example, a note due at a fixed day, or before, if made out of the sale of certain property or upon making a collection, or in case of the death of the maker before such day. (*Harlow v. Boswell*, 15 Ill. 56; *McCarty v. Howell*, 24 id. 342; *Cisne v. Chidester*, 85 id. 523; *Beatty v. Western College*, 177 id. 280.) There can be no difference, in principle, between the exercise of an option by the maker to pay before a certain day, or a provision that the notes shall be due upon the happening of some event prior to the date fixed and an option of the holder to declare it due upon the occurrence of some event. The provision for declaring the note due did not affect its negotiability.

"The other proposition, that the stipulations of the mortgage render the amount promised to be paid by the note uncertain, is not correct. The amount is not increased in any event, but the note is to be satisfied by the sum certain therein named. *The provisions of*

*the mortgage for the allowance of costs, taxes, assessments, insurance and attorney's fees apply only in case of foreclosure and do not add to the amount of the note."* (Italics ours.)

In *Doyle v. Considine,* 195 Ill. App. 311, where the note contained the following words: "This note is given in accordance with a land contract of even date herewith between E. H. Bauch and J. P. Considine," it was held that these words did not destroy the negotiability of the instrument. As to the Illinois cases cited by defendants: In *Equitable Trust Co. v. Harger,* 258 Ill. 615, it was held that the alleged negotiable instrument was merely a letter in regard to the extension of time of payment of premiums upon certain policies and that it was not a promise to pay the alleged payee any money. *National Bond & Investment Co. v. Lanners,* 253 Ill. App. 262, is against defendants' contention. In *Chicago Trust & Savings Bank v. Chicago Title & Trust Co.,* 190 Ill. 404, the note was made payable "on or before one year after the date of the completion of the piling and filling of the premises described in a certain trust deed of even date herewith, which trust deed is executed by the undersigned payor to E. Huntington Pratt, trustee, said completion of piling and filling to be according to the requirements of a certain agreement of even date herewith made by Minna Allmendinger, the payee herein, with Samuel E. Bradt, . . . the date of said completion of piling and filling to be determined by the board of commissioners of Lincoln park," etc., and the court held that the payment of the note depended upon a contingency which might never happen and that therefore the instrument was not payable on demand nor at a fixed or determinable future time, as required by the Negotiable Instruments Act, Cahill's St. ch. 98, ¶ 21 *et seq.* In *First Nat. Bank of Cass Lake v. Lamoreaux,* 255 Ill. App. 15, the notes bore upon their face the following: "This note is issued pur-

suant to an agreement dated April 4, 1921, between Kenfield-Lamoreaux Company and others, and this note and the indebtedness represented thereby is subject to all the provisions of said agreement,'' and the agreement provided that while the notes were given for a definite amount they were to be payable out of the assets of the corporation executing the notes and that each of the notes should be paid in proportion to the amount realized after the liquidation of the company. In our opinion the instant contention is decided by the Illinois cases which we have cited in support of our conclusion and therefore we do not deem it necessary to refer to several decisions of sister states which have been cited by defendants. In the instant case the promissory part of the bonds is an unconditional, absolute promise to pay, and in the trust deed defendants acknowledge that they are ''justly indebted to the legal holder or holders of the indebtedness hereinafter described in the principal sum of Twenty Thousand and no/100 Dollars ($20,000.00) secured to be paid by Forty (40) bonds, bearing even date herewith, made payable to the order of the bearer (or the registered owner thereof), for Five Hundred and no/100 Dollars ($500.00) each numbered consecutively from One (1) to Forty (40) both inclusive,'' and none of the provisions in the deed changes or modifies the promissory part of the bonds. The fact that foreclosure proceedings might be necessary to secure the payment of the bonds does not destroy the negotiability of the bonds. (See *Hunter v. Clarke, supra.*) In our judgment, the references on the face of the bonds to the trust deed amount to no more than a declaration and agreement by defendants that the bonds are secured by a first mortgage on certain real estate. To hold that these references made the bonds nonnegotiable instruments would be to permit gross frauds to be perpetrated upon the public. As stated in *Utah Lake Irr. Co. v. Allen,* 64 Utah 511, 231 Pac.

818, "if a negotiable instrument is in fact made sub-ject to the provisions of some other contract or agreement, and such agreement modifies the unconditional promise to pay, it is an easy matter to so state, and unless it is so stated courts should not modify an unconditional promise to pay by mere implication, or forced construction, and thus destroy the negotiable character of an instrument which has been transferred to an innocent party for value and in due course."

In several propositions of law the trial court held, in effect, that under the facts of the case the burden was upon plaintiff to prove that the deceased, Edwin Cupit, had acquired title to the bonds or notes as a holder in due course and plaintiff contends that the trial court erred in so holding. At the instance of defendants, the court found that plaintiff "had failed to prove that she was a *bona fide* holder of said bonds in good faith for value without notice of the theft thereof from Mayanlake Candy Company." Section 59 of the Negotiable Instruments Act, Cahill's Ill. Rev. St. ch. 98, ¶ 79 (1929) p. 1807, reads as follows:

"Every holder is deemed *prima facie* to be a holder in due course; but when it (is) shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as a holder in due course. *But the last mentioned rule does not apply in favor of a party who became bound on the instrument prior to the acquisition of such defective title.*" (Italics ours.)

To determine the instant contention we are required to interpret the last sentence of this section, which, apparently, has never been construed by the appellate courts of this State. It is conceded that defendants executed and sold the bonds to Reliance State Bank, and that the latter sold them to the candy company and that they were stolen from that company. As

plaintiff was the holder of the bonds at the time of the trial, under section 59 she is "deemed *prima facie* to be a holder in due course" of them. Plaintiff contends that under the conceded facts the burden was not on her to prove that Cupit acquired the title to them as a holder in due course. Defendants admitted during the trial that they could not question the good faith or honesty of the administratrix in her holding of the bonds.

The so-called Uniform Negotiable Instruments Laws were drafted by John J. Crawford of the New York bar and were subsequently enacted, as so drafted, by Illinois and practically all of the other states of the Union. In his work entitled "Crawford's Annotated Negotiable Instruments" (4th ed.), in referring to section 59, the author says (p. 117):

"Where fraud is subsequent to liability.—The last sentence is necessary to qualify the general statement. If A issues his note to B, and C gets possession of it and fraudulently negotiates it to D, the fraud of C in nowise affects A, and is no defense to him when sued on the instrument by D. Thus, it has been held that the fact that one who held possession of a note for the payee puts it in circulation in fraud of his rights is no defense in a suit by the holder against the maker; nor does it change the burden of proof, so as to require the plaintiff to show in the first instance that he is a *bona fide* holder for value. *Kinney v. Kruse,* 28 Wis. 183."

In Brannan's Negotiable Instruments Law, 4th ed., the author, in referring to section 59, states (pp. 540–1):

"In *Parsons v. Utica Cement Co.,* 80 Conn. 58, 66 Atl. 1024, *the court appears to have overlooked the last sentence of sec. 59* and held that where the plaintiff acquired the instrument from a prior holder, who had obtained it fraudulently and without consideration from the rightful owner, the burden was on the plain-

tiff to prove that he was a holder in due course, although defendant, the maker, had no defense of its own to the instrument. *The last clause of sec. 59 was intended to codify the contrary case of Kinney v. Kruse, 28 Wis. 183.* See Crawford Negotiable Instruments Law, 3d Ed. 79 n. (c), 4th Ed. 117.

"After the second trial of *Parsons v. Utica Cement Co.,* 82 Conn. 333, 73 Atl. 785, the court discovered that the instrument had been made and delivered prior to the taking effect of the Negotiable Instruments Law,' and deciding the case according to the pre-existing law, the court declined to follow *Kinney v. Kruse,* saying that it is opposed to the strong current of authority. . . .

"In *Kinney v. Kruse,* A, who held possession of a note for the payee, fraudulently transferred it. This was held to be no defense in a suit by the holder against the maker and not to change the burden of proof so as to require the plaintiff to show that he was a *bona fide* holder for value. *The fraud in putting the note in circulation which will operate as a defense or change the burden of proof, must be a fraud against the defendant.*" (Italics ours.)

In the late case of *Farmers' State Bank of Dickinson v. Koffler* (N. D.), 232 N. W. 307, 70 A. L. R. 1223, the North Dakota Supreme Court was called upon to interpret section 59 of the Negotiable Instruments Law of that State (sec. 6944, Comp. Laws 1913), which is the same as our section 59. In that case the defendant contended that the presumption that the plaintiff was a holder in due course arising from the fact of possession of the instrument was destroyed by the showing that the title of the bearer who negotiated the instrument to the plaintiff was defective and that therefore the burden shifted and was cast upon the plaintiff to show affirmatively that it took the instrument in good . faith and without notice of any defect in the title.

The court held that this contention wholly disregarded the final sentence of the section and that "the cases cited are cases where the fraud rendering the title defective was in the inception of the instrument. Here there is no defect in the title so far as the maker is concerned. The action is not brought against Davis to charge him as indorsee. It is brought against the defendant as maker. The defendant became bound on the instrument at the time he delivered it to Davis. Davis indorsed the instrument and made it payable to bearer. As against Davis, defendant had no defense. Defendant is now seeking to interpose a defense which might have been available to Davis only." After quoting from a number of authorities in support of its position, the court further said: "The last sentence of section 6944, supra, was apparently intended to codify the rule of *Kinney v. Kruse* to the extent, at least, of continuing the burden of proof on the defendant in such a case as the one at bar. See Brannan, Negotiable Instruments Law, p. 551; Crawford, Negotiable Instruments Law (4th ed.) p. 117. Unless this last sentence is so interpreted, it is difficult, if not impossible, to give it any reasonable meaning. We conclude, then, that section 6944, supra, considered as a whole, does not have the effect of shifting to the plaintiff the burden of proving that he is the holder in due course of the note on which he sues merely by a showing on the part of the defendant that the title to the instrument was defective as against some intermediate indorsee. See *Voss v. Chamberlain,* 139 Iowa 569, 117 N. W. 269, 19 L. R. A. (N. S.) 106, 130 Am. St. Rep. 331; *Unaka National Bank v. Butler,* 113 Tenn. 574, 83 S. W. 655; *Ladd & Tilton Bank v. Small,* 126 Wash. 8, 216 Pac. 862; *Baird v. Lorenz, supra.* It follows, then, that in the instant case the presumption that plaintiff had received the instrument in due course operated in his favor and was sufficient to make his case and en-

title him to a recovery, unless the stipulated facts had the effect of affirmatively establishing notice of the defect in the title or lack of good faith.'' *Voss v. Chamberlain, supra* (p. 578), holds contra to *Parsons v. Utica Cement Mfg. Co., supra,* and regards the last sentence of section 59 as intended to settle the conflict of authority between *Kinney v. Kruse, supra,* and *Parsons v. Utica Cement Mfg. Co., supra,* and in favor of the rule laid down in the former case. In *Ladd & Tilton Bank v. Small, supra* (p. 12), the court held that the last sentence threw the burden of proof on a drawer who delivered blank checks to an agent to be used for a certain purpose, which were filled in and transferred by the agent to the plaintiff payee for the agent's own benefit. It will be noted that the annotator (A. L. R., *supra,* p. 1229) also thinks that the court in *Parsons v. Utica Cement Mfg. Co., supra,* overlooked the last sentence of section 59 in reaching its conclusion. Defendants, in support of their argument against the instant contention of plaintiff, rely upon this last case. The Connecticut statute is like our own, and yet the court, in quoting it (82 Conn. 333, 336), omitted that part of it which was all-important to a correct decision of the question before it. We hold that under the admitted facts of the case at bar section 59 cast the burden of proof upon defendants to show that plaintiff was not a holder in due course. We agree with the North Dakota court (*Farmers' State Bank of Dickinson v. Koffler, supra*) that ''unless this last sentence is so interpreted, it is difficult, if not impossible, to give it any reasonable meaning.''

Defendants contend that even if the instruments were negotiable, ''the payment, on demand to Mayanlake, without notice of plaintiff's possession of the instruments sued upon in this action, after taking security from Mayanlake, subrogated the defendants to the right of Mayanlake against plaintiff and this right can be set off in this action.'' We find no merit in this

contention. In their argument defendants seek to interpose a defense which might, in certain proceedings wherein the Mayanlake Candy Company was a party, be available to that company but which cannot be relied upon by the defendants in the instant case. We may add that at the time defendants paid the candy company the latter did not have possession of the bonds and therefore defendants paid them at their peril. Defendants recognized this principle of law and they demanded, and were furnished, an indemnity bond before they would make payment.

Plaintiff contends that there should be a judgment in this court for plaintiff for the amount of her claim. After a careful consideration of this contention we have reached the conclusion that justice will be best served by a retrial of this cause.

The judgment of the superior court of Cook county is reversed and the cause is remanded.

*Reversed and remanded.*

GRIDLEY and KERNER, JJ., concur.